ACAMPO WINERY AND DISTILLERIES, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7637.    Promulgated August 21, 1946.

*Robert M. Searls, Esq.*, and *Frank C. Scott, C. P. A.*, for the petitioner.

*W. J. McFarland, Esq.*, for the respondent.

## OPINION.

MURDOCK, *Judge*: The Commissioner has taken an untenable position upon the main issue in this case. It is contrary to the stipulated facts and, as a consequence, is not supported by the cases upon which he relies. He contends that the trustees were "trustees in dissolution," acting for and on behalf of the corporation to carry out its liquidation and dissolution, they effected the sale for the corporation, the latter realized the proceeds and is subject to the tax on the net gain. He states in support of this contention that the authority given the trustees was for the purpose of liquidating the properties, settling the debts of the corporation, and paying the remainder to the shareholders. He cites *Mrs. Grant Smith*, 26 B. T. A. 1178, and *First National Bank of Wichita Falls, Trustee*, 3 T. C. 203, which would be helpful if the facts here were as the respondent states them, but the stipulation and the testimony are to the contrary.

The assets of the corporation in the *Smith* case were transferred to an agent for the directors, who were acting as trustees in liquidation. The agent was not chosen by the stockholders and was not representing them in receiving or selling the assets. The trustee in the *Wichita Falls* case also acted for the corporation under circumstances unlike those here present.

The negotiations which led to the sale in the present case were begun after the liquidating distribution, were carried on by trustees elected by and representing only stockholders, were not participated in by the corporation in any way, and had no important connection with any prior negotiations. These facts distinguish this case from *Mrs. Grant Smith, supra; Fairfield Steamship Corporation*, 5 T. C. 566; affd., 157

Fed. (2d) 321;* *Meurer Steel Barrel Co.* v. *Commissioner*, 144 Fed. (2d) 282; certiorari denied, 324 U. S. 860; and *Court Holding Co.* v. *Commissioner*, 324 U. S. 331, cited and relied upon by the Commissioner, in which the negotiations leading to the sale were instituted and pushed to an advanced stage by representatives of the corporation. The case of *Howell Turpentine Co.*, 6 T. C. 364, is similarly distinguishable.

The trustees in the present case were not in form or in fact "trustees in liquidation." They were not named or authorized to carry out the liquidation of the corporation. The corporation was doing its own liquidating and dissolving. It retained assets needed in winding up its affairs and it was proceeding with its liquidation. If any further distribution in liquidation is permitted, it will make it. The trustees were not authorized to settle any debts of the corporation or to do anything else in its behalf. The assets distributed to the trustees were not in fact used to pay off any debts of the corporation. The proceeds of the sale did not go to or benefit the corporation. The various instruments expressly provided that the trustees were to act solely for the stockholders in receiving the first liquidating distribution and in selling the assets thus received. The respondent may not distort the stipulated facts to support his determination.

It is frankly conceded that the petitioner did not want to sell any of its assets because of the heavy taxes which would follow such a step. It refused to sell. It is also conceded that the stockholders wanted to get their money out of the petitioner and they formulated a plan for that purpose which was adopted in preference to any other because they thought it would be acceptable to possible buyers and would have tax advantages. The respondent says "it would therefore be proper to disregard the trusteeship device in the computation of income tax liability under the rubric of *Gregory* v. *Helvering*, (1935) 293 U. S. 465; *Alice H. Bazley*, (1945) 4 T. C. 897, aff'd. (C. C. A. 3rd, 1946) 155 F. (2d) 237; and *Court Holding Company* (1945), 324 U. S. 331." Form sometimes gives away to substance in tax matters, but here the steps taken were real and genuine. Cf. *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14. The cases cited are not authority for the proposition that the method resulting in most tax must be selected in preference to another, otherwise proper and permissible, which would result in less tax. The law is to the contrary. *Gregory* v. *Helvering, supra.*

The respondent also argues that the distribution was not in accordance with section 401 (a) of the Civil Code of California. He cites no decided case to support this argument. It is not too clear just how this contention, if sound, would help him. The part of the code upon which he relies is as follows:

---

*The question on which the Circuit Court based its affirmance is not involved in the present case.

After determining that all the known debts and liabilities of a corporation in the process of winding up have been paid or adequately provided for, the directors shall distribute all the remaining corporate assets among the shareholders and owners of the shares according to their respective rights and preferences. * * *

The payment of a debt or liability shall be deemed to have been adequately provided for if the payment thereof has been assumed or guaranteed in good faith by one or more financially responsible corporations or other persons, and such provision was determined in good faith and with reasonable care by the board of directors to be adequate at the time of any distribution of assets by the directors hereunder.

The respondent says that "payment of the corporate liabilities was not provided for until Gibson, the ultimate purchaser, assumed payment of the bank liabilities of $361,787.93 as part payment of the purchase price." The board of directors of the petitioner adopted a resolution approving a finding that the properties transferred which were subject to liens of record were adequate security for those debts. That finding was fully justified by the facts. The assets here in question were transferred to the trustees subject to the secured debts of record. Other assets, adequate in amount, were retained by the corporation to meet all other liabilities. Thus it does not appear that there was any failure to comply with the code. Furthermore, the liens of record, "the bank liabilities," were not "assumed" by Gibson. He merely bought "subject to" those debts. Thus, if there was any defect in the distribution, it was not cured by the sale and it is not clear how this would help the respondent. Furthermore, the distribution would not be void in any event and the Commissioner would not be in position to complain or to make anything of any failure to provide adequately for the debts. Cf. section 402 of the code.

The sale was made for the stockholders, who owned the assets sold. It was not made by or on behalf of the petitioner. No sound reason for taxing the corporation with any gain from the sale has been suggested. *Conservative Gas Co.*, 30 B. T. A. 552; *Central National Bank, Trustee*, 25 B. T. A. 1123. Cf. *Falcon Co.*, 41 B. T. A. 1128; affd., 127 Fed. (2d) 277; *Chisholm* v. *Commissioner, supra; George T. Williams*, 3 T. C. 1002; *Fruit Belt Telephone Co.*, 22 B. T. A. 440; *Robert Jemison, Jr.*, 3 B. T. A. 780.

The Commissioner added $36,710.98 to the income reported by the petitioner. He did that because the petitioner's opening inventory was overstated by that amount. The petitioner concedes that that adjustment was proper in so far as the wines giving rise to the overstatement of the opening inventory were sold during 1943. He points out, however, that wines giving rise to $4,774.57 of the overstatement of the opening inventory were not sold during 1943, as determined by the Commissioner, but were distributed to the trustees for the

stockholders. See the holding upon the first issue herein. The respondent does not contest the fact that the $4,774.57 figure is correct. The petitioner has made an assignment of error contesting the addition of the $4,774.57 to income as a part of the larger amount, $36,710.98.

The respondent's brief does not indicate that he has understood this issue and it does not contain any helpful discussion on the point. We, too, have had some difficulty in understanding the issue as presented by the petitioner. However, we are satisfied that the elimination of the $4,774.57 follows as a corollary of our holding, on the first issue, that the petitioner did not sell the wines to Gibson, but distributed them in kind to its stockholders in liquidation.

If the petitioner had sold those wines, then its profit would have been computed properly upon the smaller correct inventory figure and the $4,774.57 would have been properly added to income as reported. But, since they were not sold, the petitioner did not realize anything from their disposition, did not recover any part of their inventory value, did not realize any gain in addition to that reported. It was immaterial from the standpoint of its 1943 taxable income whether they appeared in the opening inventory at one figure or at another, so long as they were taken out of the inventory account at the same figure at which they appeared therein. The Commissioner has stated in his notice of deficiencies that they were taken out at the same figure at which they appeared in that account. It follows that no adjustment to income was called for or proper. Apparently the Commissioner made the adjustment only because of his erroneous holding that these wines were sold to Gibson by the petitioner. He has advanced no other sound reason for his action.

The next issue is whether the Commissioner erred in disallowing the deductions for "step-up" and "overcosts" claimed for 1943 and in including the distribution from CCWI in income for that year. The record does not support all of the findings which the petitioner requests and leaves something to be desired in showing just how the issue arises. However, the parties do not seem to be in disagreement as to any of the figures. They differ on general principles. The petitioner contends that the deductions which it claimed in prior years on account of "step-up" were all that it was entitled to, the Commissioner erred in allowing deductions in those years for the full amounts paid to CCWI on releases, and, consequently the deferred "step-up" receivable and the deferred "overcost" receivable which it charged off in 1943 after the settlement were properly deductible at that time and the distribution which it received was merely a return to it of an amount due from CCWI as an excess contribution by the petitioner to the expenses of CCWI. Apparently the petitioner

did not receive in the settlement the full total of the balances in its "step-up" and "overcost" receivable accounts as shown by its books and the first two items in controversy represent those differences.

The Commissioner contends that the petitioner had no right to recover any part of the total amounts which it paid to CCWI for releases, regardless of whether they represented "step-up" or "overcost," except as the directors of CCWI might later determine that the balance in its "Operating, Capital and Reserve" account was more than it would require for its own use and distribute a part of that account ratably to all member wineries. Cf. *Farmers Union State Exchange*, 30 B. T. A. 1051, 1066. The record supports this contention. The total release payments were definite obligations of the petitioner when paid, fixed by events which had then occurred. The petitioner has not shown that lesser liabilities accrued or that there was any sound basis for accounting for less than the full amount paid for releases. They were properly allowed in full as deductions in those years. The Commissioner did not err in refusing to allow duplicating deductions for 1943. Furthermore, the distribution made by CCWI to the petitioner in 1943 was taxable income for that year. It was a partial return of amounts taken as deductions in prior years and was properly to be reported as income when returned. *Estate of William H. Block*, 39 B. T. A. 338 (affd., 111 Fed. (2d) 60; certiorari denied, 311 U. S. 658) and cases cited therein. Cf. *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281.

The petitioner relies upon *San Joaquin Valley Poultry Producers Association* v. *Commissioner*, 136 Fed. (2d) 382, for the proposition that the balance in the "Operating, Capital and Reserve" account of CCWI belonged to the member wineries and did not represent taxable income when distributed, but represented a deductible item to the extent that it was not distributed to pay the balances in the petitioner's two deferred receivable accounts. The question in that case was whether a nonprofit organization had taxable income. It placed the items in question in a reserve account. The circumstances and the question in that case were so different from those involved herein that the case is not controlling here.

The petitioner also argues that the adjustments made by the Commissioner distort its income reported upon an annual basis. The facts used in this argument are not clear from the record but, aside from that, we could not find error in the determination upon this theory.

The next point urged by the petitioner is that it is entitled to a deduction for 1943, under sections 23 (s) and 122 of the Internal Revenue Code, of net operating losses sustained in 1944 and 1945. The notice of deficiency was dated January 23, 1945. It contained no reference to a net operating loss deduction for 1943 based upon an operating

loss for the fiscal year ended March 31, 1944, and, of course, the next fiscal year had not yet ended. The parties have now stipulated facts from which the deduction sought can be computed. The respondent argues, however, that no deduction may be allowed because this petitioner was "substantially liquidated and marking time" during 1944 and 1945 and "was no more the *taxpayer* it was in previous years, in substance and in fact, than if it had legally changed its existence." He says that Congress intended this deduction only where the same taxpayer was continuing to carry on substantially the same business in the loss years that it had carried on in the taxable year. He cites no authority to show that this petitioner is not entitled to whatever deduction the stipulated facts will show. The words of the statute are general in their application and something would have to be read into them which is not there to limit them so that they would not apply in this case.

The parties are to agree upon the effect of any change in California franchise tax liability. The petitioner raises other issues only in the alternative to an unfavorable decision on the first point decided herein. They need not be considered, since the main issue has been decided for the petitioner.

*Decision will be entered under Rule 50.*