Birch Ranch & Oil Company, a corporation, v. Commissioner.
Birch Ranch & Oil Co. v. Commissioner
Docket No. 8720.
United States Tax Court
1948 Tax Ct. Memo LEXIS 230; 7 T.C.M. (CCH) 152; T.C.M. (RIA) 48040; March 24, 1948
George Acret, Esq., 650 S. Grand Ave., Los Angeles, Calif., for the petitioner. Earl C. Crouter, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion KERN, Judge: Respondent determined deficiencies in petitioner's income taxes and declared value excess-profits taxes for the taxable years ended September 30, 1941 and 1942, as follows: Declared Value
Excess-Profits
Year
Income Tax
Tax
1941
$ 7,833.44
$4,565.41
1942
11,915.67
1,687.10
*231 In its amended petition filed herein on July 25, 1945, petitioner alleged that the respondent erred in determining these deficiencies; and among the errors set out in the petition alleged that respondent erred in determining that petitioner was on the cash receipts and disbursements basis, and in disallowing "the deduction (claimed as taxes) of $120,000 interest on $2,000,000 of bonds issued by Reclamation District No. 2035 * * *". [1] In paragraph V (i) of the amended petition the following allegation of fact was made: "That during petitioner's fiscal year ending September 30, 1944, petitioner suffered a loss in the sum of $73,556.88 by reason of the drilling and abandonment of an oil well known as the Stovall-Wilcoxson well, and the leasehold interest in connection therwith; that in the same year this petitioner suffered losses from sales of property other than capital assets as follows: "A 338-acre farm situated in
Stanislaus County, California
$36,417.50
Lots 61, 112, 141, Tract 993
1,160.00
Lots 32, 36, 60, 91, Tract 993
1,520.00
Lots 87, 62, 189, 90, 108, Tract
993
1,730.00
Lot 201, Tract 993
1,200.00
Store Building, 320 Venice
Blvd., Los Angeles
5,500.00
*232 "that in its income tax return for said year petitioner listed and deducted all of the aforesaid items of loss in the total sum of $121,084.38; that should this court deny any part of this petitioner's petition herein this petitioner desires to carry back to its fiscal year ending September 30, 1942, as much of said losses in the said sum of $121,084.38, up to $25,000.00 thereof, as may be necessary to offset any part of the said tax deficiencies involved herein." In paragraph (i) of the prayer of the amended petition, petitioner asks as follows: "That should this court deny any part of this petitioner's petition herein that petitioner be adjudged entitled to carry back to its fiscal year ending September 30, 1942, as much of said losses in the said sum of $121,084.38, up to $25,000.00 thereof, as may be necessary to offset any part of the said deficiencies involved herein." Respondent denied the material allegations of petitioner's amended petition by answer on August 29, 1945. At the hearing held herein on June 30, 1947, counsel for petitioner conceded that there were deficiencies in tax as determined by *233 respondent, but asked that the Court, in its decision to be entered in this proceeding, provide by order that the petitioner should be entitled, in computing its tax liability for the fiscal year 1942, to the carry-back of losses sustained in 1944, if it should be determined in the proper proceeding that there were losses in 1944 subject to carry-back. Respondent moved orally that a decision be entered in favor of respondent in the amounts of the deficiencies determined by him as to each of taxable years here involved. These motions were taken under advisement. Petitioner concedes that no net operating loss from 1944 may be carried back to 1941. As to petitioner's fiscal year ended September 30, 1941, and the deficiencies determined by respondent in petitioner's taxes for that year, respondent's motion is granted. Upon brief the petitioner's position is stated as follows: "We respectfully submit that respondent's motion as to the determination of the deficiency for 1942 ought to be denied and that petitioner on the other hand ought to be granted temporary relief herein by this court's determination (in lieu of the granting of a motion) as follows: "1. That petitioner is entitled *234 to carry back to the year 1942 such operating loss as it may have suffered during the year 1944. "2. That the existence of such operating loss for the year 1944 cannot be determined in this proceeding. "3. That the question of petitioner's right to a redetermination of the deficiency assessment for 1942 be held open until the commissioner's determination of the existence or non-existence of such operating loss shall have become final, or shall have become lost by the running of the statute of limitations." At the hearing herein petitioner introduced in evidence its income and declared value excess-profits tax return for the fiscal year ended September 30, 1944, which showed net income in a minus figure of $84,179.37 and reflected the loss alleged in the petition, a report of the internal revenue agent in charge, Los Angeles Division, covering the examination of its income tax return for that year, and the Memorandum Findings of Fact and Opinion entered by this Court on April 20, 1944, in the case of Birch Ranch and Oil Co., Docket No. 109993, which involved the tax liability of petitioner for the years 1937 and 1939. The report of the internal revenue agent made no adjustments *235 with regard to petitioner's tax liability for the fiscal year 1944, but in the statement attached thereto adjusted the net income as disclosed by the return by increasing the net loss from $84,179.37 to $186,899.37. The report contains the following statement: "The additional Net Loss as shown in this report is brought about by the allowance, in full, of amounts paid by the taxpayer in this fiscal year for assessment taxes on Reclamation District #2035. A part of the amount paid in this year covers amounts accrued on the corporation's books in prior years, and disallowed in the prior Agent's reports as deductions since the corporation was on a cash basis. For a breakdown of these amounts see Schedule 1-A of this report. "The findings as shown in this report were discussed with Mr. Robert K. Landrum, Secretary of the taxpayer corporation, who agreed to all the proposed adjustment shown in this report." At the hearing herein counsel for respondent reaffirmed the denial contained in his answer relating to the ultimate fact of petitioner's operating losses for 1944, and stated that the report of the internal revenue agent in charge did not represent the respondent's position with *236 regard thereto. Respondent, on brief, contends that there is no evidence in the record upon which a finding can be made as to the amount, if any, of net loss carry-back from 1944 to 1942, to which petitioner is entitled; that this is an issue raised in the pleadings upon which petitioner has the burden of proof; that there has been a failure of proof; and that, since petitioner concedes the correct determination of the deficiencies for 1941 and 1942 (aside from the question of the net loss carry-back) unconditional and immediate decisions should be entered for the full amount of the deficiencies as determined by the respondent. As we have pointed out, petitioner on brief takes the position "that the existence of [the] operating loss for the year 1944 cannot be determined in this proceeding", while the respondent's position on brief is equally explicit that the operating loss for the year 1944 sought to be carried back to 1942 is an issue in this proceeding and must be decided herein. The respective positions of counsel were not so definitely stated at the time of the hearing herein. Although the opening statements of counsel for the parties were quite long, it is not clear *237 from a reading of the transcrip[*] and was not clear at the trial, what their several contentions were. A fair statement of petitioner's position at the trial seems to be as follows: While certain allegations were made in the petition as to an operating loss in the taxable year 1944 which should be carried back to 1942, the only issue in this proceeding with regard to such a carry-back was the good faith of the petitioner in claiming it and the probability of its existence. The question of whether there was such an operating net loss in 1944, and its amount, would be decided on its merits in a proceeding involving the taxable year 1944, and only after that year had been considered administratively and with finality by the respondent, as by the issuannce of a deficiency notice relating to that year. Pending such administrative action and a hearing on themerits as to the net operating loss for the taxable year 1944 in a proceeding relating to that year, petitioner requested an order in this proceeding safeguarding its right to a carry-back of such a loss, if, when and to the amount it was ultimately established. Respondent's position at the trial seems to be fairly reflected by the *238 following excerpt from his counsel's statement: "The same fiscal year ended September 30, 1944, which, under the two-year provision of Section 122, relating to carryback, I assume Petitioner now desires to have carried back, and asserted for 1942. "Respondent on time and as soon as this petition was filed denied the allegations of fact, including subparagraph (i). I don't believe there is any question about that. That has been denied, since the Respondent's answer was filed on August 29, 1945. That remains denied, and that is still Respondent's position. "Now, with respect to these other losses referred to in that subparagraph (i) at the top of page 19, Respondent does not contest other losses or deductions, except on account of this bond situation. "As I see this case, we still have undecided and pending for the Court's decision, if we have to go into that here, the question of whether Petitioner is entitled to deductions for this tax or interest. I think there is a very serious question whether that matter is properly before the Court. I believe that counsel has referred to that previously, in saying he appreciates there is no issue here regarding 1944. "Now, it is contended *239 for administratively, and has been under consideration administratively, that is not final. It is not conceded that the Petitioner is entitled to those deductions, as counsel said, the statutes are still open. That is still a matter for the Bureau of Internal Revenue for the prior years, 1941 and 1942. "If the Court rules that is a pending issue in this case and is properly before this Court and this is the appropriate time and place to go into it, the Respondent is prepared to go through and litigate that question." The judge presiding at the hearing was not asked by either party during the hearing to rule, and did not then rule that the question of the existence and amount of the net operating loss carry-back from 1944 was an issue pending in the case, and one which should have been litigated in this proceeding. While he made no ruling on the question, he did indicate a reluctance to go into the question on the merits in the instant case, pointing out the difficulties incident to the judicial determination of the taxpayer's tax liability for one year by the determination of its net income or net operating loss for a later year which had not been subject to complete administrative *240 audit and review, when the facts necessary to such determination were disputed by the parties. Cf. Uni-Term Stevedoring Co., 3 T.C. 917; Pioneer Parachute Co., 4 T.C. 27. This recitation of the proceedings at the hearing herein is necessary to present in a fair and complete manner the question which is now before us. That question, stated broadly, is whether the existence and amount of taxpayer's net operating loss for one year may be and, in this case are, issues to be determined by this Court in a proceeding involving its tax liability for a prior year to which the net operating loss for the later year is sought to be carried back, when the years in question are not those covered by section 3780 of the Internal Revenue Code. It should be noted that sections 3779 and 3780 of the Internal Revenue Code, added by section 4 (a) of the Tax Adjustment Act of 1945, are not available to petitioner since they are applicable only to taxable years ending on or after September 30, 1945, and the net operating loss, sought to be carried back in the instant case is from the taxable year ended on September 30, 1944. If *241 section 3780 had been available to petitioner it might have filed its application for a tentative carry-back adjustment of the taxes for the taxable year 1942 at any time within a year after the end of the year 1944 and might have thereby forced the Commissioner to take immediate administrative action with regard to such adjustments. After a careful study of the question in the light of the briefs filed herein, we are now of the opinion that whether there is a net operating loss of petitioner for the taxable year 1944 and the amount thereof available as a carry-back to 1942 are issues in this proceeding and must be decided herein. Petitioner is entitled to deduct from gross income a "net operating loss deduction computed under section 122". Section 23 (s), Internal Revenue Code, as added by section 211 (a), Revenue Act of 1939. Before 1942 the net operating loss deduction included "the amount of the net operating loss carry-over * * *" from the two preceding years. It has never been questioned that with regard to a net operating loss carry-over from a preceding year, the existence and amount thereof is properly an issue in a proceeding involving a deficiency *242 determined as to a later taxable year in which a taxpayer claims such carry-over under section 122. See Moore, Inc., 4 T.C. 404, affirmed 151 Fed. (2d) 527; Bush Terminal Buildings Co., 7 T.C. 793, 817; Walter G. Morley, 8 T.C. 904, 916. By the Revenue Act of 1942, the net operating loss deduction was made to include net operating loss carry-backs. Section 122 (b), Internal Revenue Code, as amended by section 153 (a) and (c) of the Revenue Act of 1942. The legislative history of this amendment indicates that Cogress recognized that, in the usual case, a taxpayer could not determine the amount of the carry-back until the close of the future taxable year in which it sustained the net operating loss, and therefore would have to pay its tax without regard to that deduction, and later file a claim for refund. See Senate Report No. 1631, 77th Congress, 2nd Session, p. 123, C.B. 1942-2, p. 597. In 1945 subsection 322 (g) was added to the Internal Revenue Code and made retroactive to 1941. That subsection reads as follows: "(g) Overpayments Attributable to Net Operating Loss Carry-Backs and Unused Excess Profits *243 Credit Carry-Backs. - If the allowance of a credit or refund of an overpayment of tax attributable to a net operating loss carry-back or to an unused excess profits credit carry-back is otherwise prevented by the operation of any law or rule of law other that section 3761, relating to compromises, such credit or refund may be allowed or made, if claim therefor is filed within the period provided in subsection (b) (6). If the allowance of an application, credit or refund of a decrease in tax determined under section 3780 (b) is otherwise prevented by the operation of any law or rule of law other than section 3761, such application, credit or refund may be allowed or made if application for a tentative carry-back adjustment is made within the period provided in section 3780 (a). In the case of any such claim for credit or refund or any such application for a tentative carry-back adjustment the determination by any court, including The Tax Court of the United States, in any proceeding in which the decision of the court has become final, shall be conclusive except with respect to the net operating loss deduction and the unused excess profits credit adjustment and the effect of such deduction *244 or adjustment, to the extent that such deduction or adjustment is affected by a carry-back which was not in issue in such proceeding." The report of the House Committee with regard to this subsection states in part as follows (House Report No. 849, 79th Cong., 1st Sess., pp. 31-32, reported in C.B. 1945 at p. 587): "In further recognition of the fact that the events which result in a net operating loss carry-back or an unused excess profits credit carry-back may not occur until a number of years after the close of the taxable year of the overpayment, subsection (d) of section 5 of the bill adds a new subsection (g) to section 322 of the Code. * * * Section 322 (c) of the Code in effect provides that where a taxpayer has filed a petition with The Tax Court for a redetermination of a tax for a taxable year, no credit or refund of an overpayment of such tax for such year, except as determined by The Tax Court and with certain other limited exceptions, may be allowed or made. However, under the proposed subsection (g) of section 322 of the Code, even though the tax liability for a given taxable year, for example, has already been litigated before The Tax Court, credit or refund of *245 an overpayment attributable to a carry-back may be allowed or made, if claim for credit or refund is filed within the period prescribed in section 322 (b) (6), or if an application for a tentative carry-back adjustment is filed within the period prescribed in section 3780 (a). * * * "Though it is the purpose of subsection (g) to permit taxpayers to receive credit or refund of an overpayment of tax resulting from a carry-back, even though such credit or refund normally would be barred by the doctrine of res judicata or by some other law or rule of law, it is not intended that any determination of issues, including carry-back issues, made by any court in a proceeding in which the decision has become final shall be open for reconsideration. Subsection (g) provides that in the case of a claim for credit or refund of an overpayment attributable to a carry-back, or in the case of an application for a tentative carry-back adjustment, the determination of any court, including The Tax Court, in any proceeding in which the decision of the court has become final, shall be conclusive except with respect to the net operating loss deduction and the unused excess profits credit adjustment, and *246 the effect of such deduction and adjustment, to the extent that such deduction or adjustment is affected by a carry-back which was not in issue in such prcceeding. * * *" At the time of the Congressional enactment of all of the statutory provisions above referred to, section 272 (e) of the Internal Revenue Code provided that "The Board [of Tax Appeals] shall have jurisdiction to redetermine the correct amount of the deficiency * * *", and section 272 (g) provided as follows: "(g) Jurisdiction Over Other Taxable Years. - The Board in redetermining a deficiency in respect of any taxable year shall consider such facts with relation to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid." No change or amendment to these subsections of section 272 are made, or purported to be made, by the statutes dealing with carry-backs. In the instant proceeding the determination of deficiency as to the taxable year 1942 was made on April 30, 1945, and the original petition was *247 filed on July 13, 1945. At those times petitioner's return for the year ended September 30, 1944, had been prepared and filed. Petitioner was then in a position to know and claim its right to an operating net loss deduction arising from a carry-back of its net operating loss of 1944 in the determination of its correct tax liability for its taxable year 1942. It could have also filed a claim for credit or refund on account of such a deduction. The record does not show whether any such claim was filed. It does show, however, that it raised as an issue in this proceeding its right to a deduction in the taxable year 1942 on account of losses alleged to have been sustained in 1944, which can only be construed as an issue involving its right to a net operating loss deduction in 1942 arising from net operating losses in 1944 to which it was entitled as a carry-back under the provisions of section 122 (b). It is our conclusion that this issue is properly before us in this proceeding under the provisions of section 272 (e) and (g), and consequently, we must decide in this case whether petitioner sustained a net operating loss in 1944 and the amount thereof. See Acampo Winery & Distilleries, Inc., 7 T.C. 629; *248 Wier Long Leaf Lumber Co., 9 T.C. 990. With regard to petitioner's contention that the matter of its deficiency determined for 1942 be held open "until the Commissioner's determination of the existence or nonexistence of such operating loss [for 1944] shall have become final, or shall have become lost by the running of the statute of limitations", there is no precedent for the procedure suggested by petitioner; and, in addition, no practical reason exists for inaugurating such a procedure. In the absence of some statutory provision similar to section 3780, Internal Revenue Code, above referred to, there is nothing to require respondent, in considering petitioner's tax liability for its fiscal year 1944 as disclosed by its return, to do more than determine whether petitioner had taxable income for that year. If he is satisfied that petitioner had no taxable income, the respondent is not required to make a determination of the existence or amount of petitioner's operating loss for that year. Only with regard to petitioner's tax liability for prior or subsequent years would such a determination be required, for the purpose of ascertaining net operating *249 loss carry-backs or carry-overs. Therefore, as a practical matter, no useful purpose would be served by holding open the question of petitioner's correct tax liability for 1942 until respondent does something which he is not required to do. Upon the proof contained in the record before us, we are unable to find the existence or amount of any net operating loss of petitioner in its fiscal year 1944 which would give rise to a net operating loss deduction in 1942, the year before us. H. B. Moore, 8 B.T.A. 749, 754. However, because of the novelty of the procedural problems presented, the intimation by respondent's counsel that some adjustment or agreement might be made administratively with regard to the net operating loss carry-back claimed by petitioner, the grave consequences to petitioner of a conclusive determination in this case, evidently unanticipated by it, of any rights incident to its alleged net operating loss carry-back from 1944, and the fact that the Court did not direct petitioner to proceed at the hearing herein with its proof as to existence and amount of such loss carry-back, we feel that a somewhat unusual procedure should be followed in the disposition *250 of this case in order to accomplish a fair and equitable result. The parties will be given sixty days after the entering of this Opinion within which to submit an agreed computation of the correct tax liability of petitioner for its fiscal year 1942, or to otherwise move in regard thereto. If, within that period, no such computation is submitted or no motion is filed by either party, then, pursuant to our Opinion that the existence and amount of petitioner's alleged net operating loss carry-back from 1944 is properly here at issue and have not been proved by the evidence submitted, Decision will be entered for the respondent. Footnotes
1. The quoted language is taken from the notice of deficiency.↩