OPINION. Black, Judge: We have endeavored to make full and complete findings of fact based on the extensive evidence in these proceedings, and in our decision of the issues raised by the pleadings we have endeavored not to unnecessarily repeat the facts. We first take up the issue raised as to the correctness of the Commissioner’s determination that the J. T. S. Brown’s Son Co. realized a gain in 1942 of $530,635.98 from the distribution of “whiskey and/or whiskey certificates to your stockholders,” as set out in his deficiency notice. We do not quite understand the argument made by respondent in his brief respecting this issue. He does not seriously argue that a corporation realizes income when it distributes its assets in kind to its stockholders in liquidation. Yet he does not concede the error of his determination in this respect. It is clear that a corporation does not realize income from the distribution of its property in kind in liquidation to its stockholders. Treasury regulations so provide.[2] No sales of whiskey certificates or barrel whiskey occurred in 1942. All that occurred with respect to that particular class of property was the distribution.of it by the company on December 30,1942, in liquidation!*) its sole stockholder, James R. Favret. Manifestly, that distribution to him by the company did not give rise to any taxable income to the corporation. On this issue we reverse the Commissioner. The next issue is raised by petitioners’ assignment of error to the determination of the Commissioner that for the taxable year January 1 to April 30,1943, the company realized “gain on sale of whiskey of $530,635.98.” This alleged gain is the same amount determined by the Commissioner against the company for the year 1942. He realizes the inconsistency of his position and does not contend that it would be possible for the company to have this same gain in both years, and he concedes that one or the other of his determinations is wrong. We think both were wrong. We have already stated our reasons for holding that his determination for 1942 was wrong. We shall now state briefly why we think his determination for 1943 was wrong. In explaining that adjustment in his deficiency notice the Commissioner said: (a) It is held that sales of whiskey made ostensibly by your stockholder or stockholders in the year 1943, were in substance made by you, and that the gain of $530,635.98 realized thereon is includible in your gross income under section 22 (a) of the Internal Revenue Code. We think the evidence at the hearing establishes conclusively that the sales in question were not made by the corporation. These sales were negotiated and made by petitioner James R. Favret after he had received the whiskey certificates in pursuance of a plan for the complete liquidation and cancellation of all his stock in the J. T. S. Brown’s Son Co. and whatever gain there was following these sales was taxable to him. This gain he returned for taxation, and he paid tax on it and it is not involved here. The facts clearly show, we think, that Creel Brown, Jr., and his wife Lelia sold their stock outright late in December 1942 to Favret. They owned all the shares of the corporation except one and one-half shares owned by Brown’s sister, Mrs. Hopfer. These latter shares were immediately acquired by Favret. There were no strings of any kind tied to these sales of stock to Favret. They were outright, for cash, which was immediately paid by him to the sellers of the stock. There had been no negotiations with any one for the sale of the whiskey warehouse certificates. Creel Brown, Jr., president of the corporation, knew, of course, that these whiskey certificates were readily salable at a good price because the United States Government had stopped the distilling of whiskey on account of the war and there was a great demand for barrel whiskey. But he testified at the hearing that he had not negotiated with any one to sell the company’s barrel whiskey prior to the sale of his stock; that what he did make up his mind to do was to get out of the whiskey business while the time to do. so was favorable and that the only method which he considered at any time was to sell his stock, and this he succeeded in accomplishing at a satisfactory price after a few weeks of negotiation with Favret. The circumstances of this sale are fully detailed in our findings of fact and need not be repeated here. After Favret acquired all the stock of the company he immediately set out to liquidate the company and operate the distillery as a sole proprietorship. In the process of this liquidation all the whiskey warehouse certificates were distributed to Favret as one of a series of distributions in complete liquidation and cancellation of his stock. Three shares of the stock were in the name of Clarence H. Duesing and three shares were in the name of Timothy S. Hogan, but these shares were qualifying shares and were beneficially owned by Favret. After the whiskey warehouse certificates were distributed to Favret in liquidation and were in his complete possession and control as an individual, subject only to the lien held by the bank for its loan, he negotiated for their sale as an individual and sold them to the several purchasers named in our findings of fact and for the amounts named in our findings. The money received by Favret from these sales was used by him in paying off his loans from the First National Bank of Cincinnati, Ohio. -None of the foregoing facts are contradicted in the record which we. have before us. Respondent offered no testimony at the hearing except the testimony of E. Trimble Smith, vice president of the First National Bank of Cincinnati and its chief loan officer. His testimony was, so far as we can see, of no benefit to respondent, but in all essential respects was corroborative of the testimony introduced by petitioners. Therefore, under the facts found by us in our findings of fact, we hold that the J. T. S. Brown’s Son Co. sold no barrel whiskey or whiskey warehouse certificates in 1943 and the “gain on sale of whiskey, $530,635.98,” which the Commissioner determined against the company in his deficiency notice is not sustained. See Falcon Co., 41 B. T. A. 1128; affd., 121 Fed. (2d) 277; Acampo Winery & Distilleries,, Inc., 7 T. C. 629; United States v. Cummins Distilleries Corporation (C. C. A., 6th Cir.), 166 Fed. (2d) 17. In the Acampo Winery & Distilleries, Inc., case, the Commissioner was contending that the sale was made by the trustees while acting for the corporation and that therefore, the gains from the sale were taxable to the corporation. In deciding against the Commissioner on this contention we said: The negotiations which led to the sale in the present ease were begun after the liquidating distribution, were carried on by trustees elected and representing only stockholders, were not participated in by the corporation in any way, and had no important connection with any prior negotiations. These facts distinguish this case from Mrs. Grant Smith, supra; Fairfield Steamship Corporation, 5 T. C. 066; affd., 157 Fed. (2d) 321; Meurer Steel Barrel Co. v. Commissioner, 144 Fed. (2d) 282; * * * and Court Holding Co. v. Commissioner, 324 U. S. 331, cited and relied upon by the Commissioner, in which the negotiations leading to the sale were instituted and pushed to an advanced stage by representatives of the corporation. The case of Howell Turpentine Co., 6 T. C. 364, is similarly distinguishable. The Commissioner in his brief in the instant case relies pretty much upon the same cases as we distinguished in the Acampo Winery & Distilleries, Inc., case. For the same reasons that we there distinguished those cases, we also distinguish them here. In United States v. Cummins Distilleries Corporation, supra, the Circuit Court held that proceeds of sales of whiskey warehouse receipts in 1943 by a stockholders’ committee subsequent to distribution in liquidation of the stockholders’ Equity in the receipts were not income to the corporation when, although the committee liquidated the corporation’s equity in the receipts, the corporation had not negotiated for their sale. The facts in the instant case are certainly as strong for the taxpayers as they were in the Cummins Distilleries Corporation case. In fact, we think they are stronger because here there was no intervening stockholders’ committee to complicate the situation. Favret was the sole stockholder and the warehouse certificates were distributed to him in liquidation, and after he had received them he negotiated as an individual for their sale and sold them. For reasons already stated we sustain petitioners on this issue and reverse the Commissioner’s determination. There remains the question of penalties. In Docket No. 12426 the Commissioner stated in regard to the period January 1 to April 30, 1943: It is held that you are liable for a penalty of 5 per cent in respect to your income and declared value excess-profits tax deficiencies, and a penalty of 25 per cent in respect to your excess profits tax deficiency, under section 291 of the Internal Revenue Code, for the year 1943. It is clear from our holding on the main issue that there will be no excess profits tax for the period in question. However, there was one small adjustment of $376.19 for the period in question relating to depreciation which petitioner did not contest. This adjustment will probably result in a small deficiency in petitioner J. T. S. Brown’s Son Co.’s income tax for the period January 1 to April 30,1943. No evidence whatever was offered as to the penalties determined by the Commissioner and petitioners do not mention them in their brief. This being the state of the record, we must affirm the Commissioner in his determination of 5 per cent penalty on whatever deficiency results from the inclusion of the $376.19 depreciation item in the J. T. S. Brown’s Son Co.’s income. We next come to a decision of the transferee liabilities of petitioners Brown and Favret. If the only adjustment which the Commissioner made to the net income as reported by the J. T. S. Brown’s Son Co. on its return was the $530,635.98 item in question, then, of course, there would be no deficiencies and therefore could be no transferee liability. However, the Commissioner made some other minor adjustments in each of the taxable years which the petitioners did not contest. Therefore it appears that in a recomputation under Rule 50 there will be some deficiencies. For this reason we must decide the issue of transferee liability. It is clear from the facts as found by us that petitioner Creel Brown, Jr., is not liable as a transferee. He simply sold his shares of stock to a willing buyer and received cash for them. He received none of the assets of the company in liquidation. Under these circumstances he is not liable as a transferee. On the other hand, it is clear to us that petitioner James R. Favret is liable as a transferee for whatever deficiencies and penalties are determined against the company in a recomputation under Rule 50. The company was completely liquidated and left with no assets, and Favret received all of its assets, which had a value considerably in excess of all the liabilities of the company, including the liability for Federal taxes. Petitioners in their brief do not argue the question of Favret’s liability as a transferee. Favret, in his petition in Docket No. 12427, does not assign any error as to the Commissioner’s determination that he was a transferee o'f the company’s assets. He assigns as error only the determination of the Commissioner as to both years that petitioner J. T. S. Brown’s Son Co. had realized a gain in each year of $530,635.98 from the transactions in whiskey warehouse receipts and barreled whiskey. We hold that petitioner Favret is liable as a transferee for whatever deficiencies and penalties are determined against the company in a recomputation under Rule 50. Decisions will be entered, v/nder Rule 50. Sec. 29.22 (a)-20 [Regulations 111]. Gross Income of Corporation in Liquidation. — When a corporation Is dissolved, its affairs are usually wound up by a receiver or trustees in dissolution. The corporate existence is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes. (See sections 274 and 298.) Any sales of property by them are to be treated as if made by the corporation for the purpose of ascertaining the gain or loss. No gain or loss is realized by a corporation from the mere distribution of its assets in hind in partial or complete liquidation, however they may have appreciated or depreciated in value since their acquisition. * * * [Emphasis supplied.]