RIPY BROS. DISTILLERS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11406. Promulgated September 22, 1948.

James E. Fahey, Esq., for the petitioner.
Clarence E. Price, Esq., for the respondent.

334

OPINION.

VAN FOSSAN, *Judge*: After the execution of the modification contract entered into June 23, 1943, in addition to other amounts, petitioner received $10,000 from Bernheim, of which the amount of $2,500 was disbursed for expenses, leaving petitioner a net income of $7,500. There is no dispute as to such facts.

The petitioner claims that the amount of $7,500 was abnormal in class under section 721 (a) (1) of the Internal Revenue Code and on a class as described in section 721 (a) (2) (A), as follows: "(A) Income arising out of a claim, award, judgment, or decree, or interest of any of the foregoing; * * *" It further claims that the amount of $7,500 is excludable from adjusted excess profits net income for the year ended June 30, 1943, and should be spread equally over the period commencing April 1, 1940, the date of the original contract, and ending June 23, 1943, the date of the modification contract and payment of the $10,000.

In December 1942 petitioner made three demands upon Bernheim, viz., that the whiskey purchased by Bernheim remaining in petitioner's warehouses be bottled at petitioner's bottling house, that Bernheim pay to petitioner 5 cents per case, or 80 cents per barrel, bottling profit on every barrel of whiskey removed from petitioner's warehouses without bottling at petitioner's bottling house, and that an allocation of cost of bottling house supplies and other costs be made. Other demands were made by petitioner, but they are not material to this issue since they were disposed of in other provisions of the modification agreement.

The above demands were settled in paragraphs VIII and XI of the modification agreement of June 23, 1943. In paragraph VIII it was agreed that paragraph 19 of the original agreement containing the bottling provisions be eliminated. It was further agreed that Bernheim pay the cost of bottling operations in the agreed amount of $1,055.41, including salary of the bottling house manager, up to November 1, 1942, and that thereafter it was under no obligation to pay any of the costs of the bottling plant. Petitioner was given the right to use its bottling facilities for its own account and it agreed

to bottle for Bernheim at such times as it requested at standard bottling rates or such lower price as might be agreed upon. In addition to the above bottling house costs, Bernheim agreed to pay to petitioner the sum of $10,000, "in complete discharge of all claims of every nature arising prior to the date hereof and whether or not heretofore asserted by Seller [the petitioner]."

In paragraph XI of the modification agreement Bernheim was given the right to remove any whiskey purchased by it from petitioner and to bottle the same elsewhere or make other disposition of it as it desired, in its sole discretion.

Assuming, without further discussion, that the amount received was "Income arising out of a claim" under section 721 (a) (2) (A) and that the amount received was abnormal in class in that no such income was received during the four previous taxable years (see *Premier Products Co.*, 2 T. C. 445, 453), "the taxpayer gets no deduction unless the net abnormal income or some part of it is properly attributable to other years under section 721 (b)." *Geyer, Cornell, Newell, Inc.*, 6 T. C. 96, 103; *W. B. Knight Machinery Co.*, 6 T. C. 519, 534, and *Harris Hardwood Co.*, 8 T. C. 874.

The fact that the claim or claims arose out of diverse interpretations of the contract does not establish that the amount received in settlement of the claims is attributable to the period beginning with the date of the execution of the contract, April 1, 1940, and ending with the date of the modification agreement, June 23, 1943, as contended by petitioner.

Section 35.721–3 of Regulations 112 provides, in part, as follows:

Items of net abnormal income are to be attributed to other years in the light of the events in which such items had their origin, and only in such amounts as are reasonable in the light of such events. * * *

The "events in which such items had their origin" are those which gave rise to the controversy, whether of omission or commission of obligations required to be performed under the contract.

Bernheim failed in 1941 to bottle at petitioner's bottling plant, as it had done in the past, and then "as the company [petitioner] moved into 1942, when it began to run part time for the Government, part time for itself, and part time for Bernheim [March 1942], it noticed that Bernheim was gradually emptying the company's warehouse and transferring the barrels of whiskey to other warehouses that were owned by Bernheim." Apparently there was no controversy in this respect in or during 1940. In December 1942 petitioner demanded, among other things, payment to it of the 5 cents per case, or 80 cents per barrel, profit on every barrel of whiskey withdrawn and not bottled by it. It would seem that the withdrawal of whiskey without bottling was not to any considerable extent prior to about March 1942, or petitioner would have noticed it prior to that date. However, the amount

of bottling previously done by petitioner for Bernheim, the number of barrels removed without bottling, the time when such removal began and during which it continued, and the aggregate amount claimed by petitioner are not disclosed. Without such information it can not be determined with reasonable certainty what portion of the abnormal income allocable to the bottling claim is attributable to the taxable year and prior years.

Furthermore, it appears that the income involved was not paid in settlement of the loss of anticipated bottling profits only. The nature of such other claims is not disclosed, except in general terms, i. e., claims of every nature arising prior to the date of the modification contract, whether or not theretofore asserted by petitioner. It may be, as suggested by respondent, that a portion of the amount was paid for the elimination of the bottling provision and the right given Bernheim to withdraw the whiskey from petitioner's warehouses without further dispute. If so, such portion would not be attributable to prior years.

The argument of petitioner that the only period over which the income could have been accrued was the period beginning April 1, 1940, when the first contract, including the bottling provisions, was entered into, and ending June 23, 1943, when the contract was amended, is fallacious. Ordinarily where the right to income is disputed it is not accruable and includible in gross income until taxpayer becomes entitled to and does receive it. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417. If the income was income ordinarily includible by petitioner in the period beginning April 1, 1940, and ending June 23, 1943, then the income was not abnormal in class. Except for the provisions of section 721, the income involved was includible in gross income for the year ended June 30, 1943. To avail itself of the benefit of that section, petitioner must show that the net abnormal income was attributable to other years "in the light of the events in which such items had their origin." This the petitioner has failed to do. The determination of the Commissioner on this issue, therefore, is approved.

It is contended by petitioner that it, in good faith and unconditionally, distributed the warehouse receipts covering 1,152 barrels of whiskey to its stockholders as a dividend in kind, that the sale thereof in November 1943 was made by the stockholders, acting through their agent Skaggs, and that it realized no gain from such transaction. In support of its position it relies on *Commissioner* v. *Falcon Co.* (CCA–5), 127 Fed. (2d) 277; *Novo Trading Corporation* v. *Commissioner* (CCA–2), 113 Fed. (2d) 320; *Howell Turpentine Co.* v. *Commissioner* (CCA–5), 162 Fed. (2d) 319; *Transport, Trading & Terminal Corporation*, 9 T. C. 247 (on appeal CCA–2); *Acampo Winery & Distilleries, Inc.*, 7 T. C. 629; *Cooper Foundation*, 7 T. C. 389; and *George T. Williams*, 3 T. C. 1002.

The respondent contends that the transaction, while in form a distribution of a dividend in kind and sale thereof by the stockholders, was in substance a sale by the petitioner arranged for at the New York conference held in June 1943, and that petitioner realized a profit of $39,233.24 therefrom in the year ended June 30, 1944. The figures involved are not in dispute. The respondent relies on such cases as *Commissioner* v. *Court Holding Co.*, 324 U. S. 331; *United States* v. *Phellis*, 257 U. S. 156; *MacQueen Co.* v. *Commissioner* (CCA-3), 67 Fed. (2d) 857; *Meurer Steel Barrel Co.* v. *Commissioner* (CCA-3), 144 Fed. (2d) 282; *Taylor Oil & Gas Co.* v. *Commissioner* (CCA-5), 47 Fed. (2d) 108; *Hellebush* v. *Commissioner* (CCA-6), 65 Fed. (2d) 902; *Burnet* v. *Lexington Ice & Coal Co.* (CCA-4), 62 Fed. (2d) 906; *Fairfield Steamship Corporation* v. *Commissioner* (CCA-2), 157 Fed. (2d) 321; certiorari denied, 329 U. S. 774.

Whether the sale was made by petitioner or by its stockholders is a question of fact. Each case must be determined upon its own peculiar facts.

The rules applicable in determining such question are stated in *Commissioner* v. *Court Holding Co., supra,* as follows:

* * * The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. Rather, the transaction must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant. A sale by one person cannot be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title. To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress.

The respondent argues that an analysis of the entire transaction leads to the inevitable conclusion that petitioner's representatives had an understanding with Schenley relative to the purported dividend before the corporate resolution declaring the dividend was adopted. Respondent's position is untenable in view of the uncontradicted testimony of petitioner's general counsel and of Tilford L. Wilson, its secretary and director, both of whom participated in the negotiations in New York in June 1943, that no discussion was had during such negotiations or thereafter with the representatives of Bernheim or Schenley with respect to the distribution of the warehouse receipts. They testified further that no officer or agent of petitioner participated in the sale of the receipts for or on its behalf, and that Skaggs in such transaction acted, not as general counsel for petitioner, but as agent for the stockholders.

On November 5, 1943, the warehouse receipts for the 1,152 barrels of whiskey were delivered to Skaggs as the agent of and for the account of the stockholders of petitioner. Under the terms of the

warehouse receipts the whiskey was held at the warehouse for the account and subject to the order of petitioner. Petitioner had endorsed such receipts in blank prior to delivery to Skaggs. Sec. 358.380, Ky. Rev. Stats. By delivery of the receipts so endorsed the stockholders acquired title to the goods covered thereby, subject to the terms of any agreement with the transferor. Sec. 358.420, Ky. Rev. Stats. The receipts were delivered as a dividend in kind, without any restriction. The receipts so endorsed could then be negotiated by delivery without further endorsement. Sec. 358.370, Ky. Rev. Stats. It is true that the stockholders, not holding licenses for the sale thereof, could not gain actual possession of the whiskey. This is immaterial. The receipts were negotiable. As holders therof, they or Skaggs, as their agent, could lawfully sell the same to Schenley or Bernheim or other person licensed to sell whiskey and permitted to withdraw the same from the warehouse. This the respondent does not dispute. When Skaggs sold the receipts to Schenley or Bernheim he was acting as agent for the stockholders and not as general counsel or agent for the petitioner. That Skaggs was general counsel of petitioner and made no charge for his services to the stockholders is not important.

The fact that petitioner breached its contract in distributing the receipts and Schenley and Bernheim did not sue petitioner is not indicative of an understanding between petitioner and Schenley or Bernheim. It is true that under the contract petitioner agreed not to dispose of whiskey manufactured for its own account prior to January 1, 1945. Bernheim's or Schenley's option to purchase such whiskey was not exercisable at any time, but was conditional upon the exercise of the option to renew the agreement for an additional five-year period or the exercise of its option to purchase petitioner's distillery. Unless it exercised one or the other option petitioner was not required to sell such whiskey to either Schenley or Bernheim. Neither Schenley nor Bernheim had exercised either option and they were not required to do so until sixty days prior to January 1, 1945. Petitioner was operating full time in the manufacture of alcohol for war purposes. Whiskey was scarce. Those dealing in that commodity were anxious to buy. In our opinion Schenley's purchase and failure to sue petitioner was due rather to other circumstances, such as suggested by respondent on brief, as follows:

* * * Whiskey was at a premium in 1943 and Schenley was desirous of obtaining all the whiskey possible regardless of the circumstances involved. * * * It is logical to assume under the circumstances that Schenley was more desirous of obtaining whiskey during this period even if it cost more than its contract with petitioner called for, than becoming involved in litigation with the petitioner for breach of contract. * * *

As stated in *United States* v. *Cummins Distillers Corporation* (CCA-6), 166 Fed. (2d) 17, where the corporation had not negotiated with the party to whom the sale was made, and:

> * * * where the corporation declares and pays a dividend in kind to its stockholders and the stockholders upon their own responsibility dispose of corporate assets so assigned, a gain realized from this sale may result in income to stockholders but none to the corporation. *Howell Turpentine Co.* v. *Commissioner*, 162 Fed. (2d) 319 (C. C. A. 5). * * *

In that case warehouse receipts covering barrels of whiskey were distributed to stockholders in liquidation.

It is our conclusion, and we have so found, that the warehouse receipts involved were sold by petitioner's stockholders through their agent and not by petitioner. The amount of $39,233.34, therefore, is not includible in the gross income of petitioner for the year ended June 30, 1944.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

DISNEY, *J.*, dissents.

JOHNSON, *J.*, dissents on the first issue.