H. Dixon Smith, Inc. v. Commissioner.
H. Dixon Smith, Inc. v. Commissioner
Docket No. 16648.
United States Tax Court
1949 Tax Ct. Memo LEXIS 85; 8 T.C.M. (CCH) 790; T.C.M. (RIA) 49215; August 31, 1949
C. P. Bagley, Esq., for the petitioner. Edward L. Potter, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: Respondent determined a deficiency in income tax of $5,975.51 for the period May 1, 1944, to July 8, 1944. The question at issue is whether or not the sale to Calhoun Lumber Company of certain assets which petitioner had distributed upon its dissolution to its sole stockholder, H. Dixon Smith, was a sale by petitioner. Findings of Fact Petitioner is a corporation which was organized under the laws of the State of Georgia on May 17, 1927, dissolved by order of the Superior Court of Muscogee County, Georgia, on July 3, 1944, and liquidated on July 8, 1944. The business of petitioner was that of a wholesale *86 lumber manufacturer. Petitioner's plant consisted of 17 2/5 acres of land located across the river from Columbus, Ga., in Russell County, Alabama, and included a sawmill, planer, warehouse, office, sheds and the usual equipment attendant to lumber manufacturing operations. The president and sole stockholder of petitioner at the time of its dissolution was H. Dixon Smith. During the years 1942, 1943 and 1944 H. Dixon Smith was in very poor health. He had suffered from bronchial asthma since childhood. He died on October 24, 1945, from heart failure brought about by bronchial asthma. Among the customers of petitioner was Calhoun Lumber Company, a partnership consisting of Jesse P. Calhoun and E. L. Cook, which was formed about October or November, 1943. Calhoun was in the sand and gravel business, and the Calhoun Lumber Company, which was engaged in the wholesale lumber business, was operated by Cook. Cook had known H. Dixon Smith for some twenty years and had bought lumber from him. About 1942 H. Dixon Smith asked Cook if he wanted to buy his business, stating that his health was failing him and that he wished to retire. Cook told him that he did not, not as a corporation, that *87 he would not buy the capital stock of any closed corporation, but that if Smith would dissolve his corporation, he would buy the plant and land and assets. Smith did not at that time offer to sell Cook anything other than the capital stock of petitioner corporation, and, accordingly, the matter was dropped for the time being. Nothing more was said between Smith and Cook relating to a sale until February or March, 1944, except that a conversation may possibly have taken place in 1943, at which time Cook reiterated to Smith that if he closed his corporation, he would be interested, otherwise not. In February or March, 1944, Cook was in Smith's office to buy lumber and Smith stated to him, "My health is failing me and I am going to sell this business." Cook replied emphatically to Smith, as before, that he would not buy the capital stock of any closed corporation, explaining that if he bought the capital stock he would be assuming all contingent liabilities of the corporation including income tax. Smith then stated, "Well, we will liquidate it," to which Cook replied, "Well, liquidate it and then we will talk to you." Cook also insisted on buying assets instead of stock because he expected *88 to use the purchase price as his cost basis for income tax purposes. During 1943 and 1944 there was a large demand for lumber in the Columbus area, which was greater than the available supply. There was also a large demand for sawmills, planing mills, and equipment of that type, which was almost impossible to get. On June 5, 1944, petitioner filed a petition for dissolution in the Superior Court of Muscogee County, Georgia, which court issued an order to show cause, and set July 3, 1944, as the date for hearing on said order. On July 3, 1944, the Superior Court of Muscogee County, Georgia, issued an order duly dissolving petitioner corporation. On July 8, 1944, H. Dixon Smith received all of the corporation's assets in complete liquidation thereof, subject to its outstanding liabilities, which he assumed. Under date of July 8, 1944, entries were made on the books of petitioner corporation recording the above dissolution and distribution of all of its assets to H. Dixon Smith, and the assumption by him of all of the corporation liabilities. Entries were first made increasing the value of the assets from their cost of $37,121.83 to their appraised fair market value of $63,546.64. *89 Entries were then made recording the distribution of all of the corporate assets at their appraised value of $63,546.64 to Smith, and the assumption by him of all corporate liabilities amounting to $8,341.92. Following these entries the books were employed as individual books of Smith, to record the receipt of the assets at their appraised value, and the assumption by him of the corporate liabilities. Petitioner corporation duly reported to respondent on Form 966 full information with respect to the dissolution and liquidation, as required by Section 148 (d) of the Internal Revenue Code, including a detailed summary of the assets distributed and their appraised fair market value on the date of distribution. Following the conversation between Smith and Cook in February or March of 1944, relative to the liquidation of petitioner corporation, nothing further was said between Smith and Cook relative to the matter until Saturday, July 8, 1944. On the morning of that day Smith called Cook and advised him that the corporation had been dissolved, and that if Cook wanted to buy the assets of the corporation from him as an individual to come over to his office. Cook *90 and his partner, Calhoun, then met Smith in his office around 10:30 that day. The assets were examined and a list prepared. Cook decided which assets Calhoun Lumber Company was willing to buy, and at Smith's request put a price on them. The price determined was satisfactory to Smith, and it was agreed to consummate the sale on that basis. The Calhoun Lumber Company borrowed $28,000 on that same day from Merchants and Mechanics Bank, Columbus, Georgia. To secure the loan a mortgage was given upon the assets transferred to the Calhoun Lumber Company by Smith. Smith and Cook first agreed upon the assets which Calhoun Lumber Company would buy on the morning of Saturday, July 8, 1944. Prior to that time Cook had not examined these assets beyond what he had seem of them over the course of past business dealings with Smith. Smith and Cook first discussed the purchase price of the assets on the morning of Saturday, July 8, 1944. Prior to that date nothing was said, nor was any agreement reached, tentative or otherwise, concerning either the purchase price or the particular assets which were sold to Calhoun Lumber Company. On July 10, 1944, H. Dixon Smith, in his individual capacity, conveyed *91 by bill of sale, dated July 8, 1944, those assets consisting of personal property, which had then been agreed upon, to Calhoun Lumber Company for a consideration of $27,674.33. On the same date, H. Dixon Smith, in his individual capacity, joined by his wife, conveyed by deed, dated the same date, the real property which had been agreed upon, to Calhoun Lumber Company for a consideration of $10,250. Entries were made on Smith's individual books recording the sale by him of the above assets to Calhoun Lumber Company. The assets sold by H. Dixon Smith to Calhoun Lumber Company were owned by Smith and sold by him in his individual capacity. The petitioner corporation did not own said assets, did not make said sale, and did not realize any taxable gain by virtue of said sale. Opinion Respondent determined that the sale of corporate assets herein after petitioner's dissolution was in reality made by petitioner, not by H. Dixon Smith, who had been president and sole stockholder of petitioner corporation and to whom its assets were distributed on dissolution. Petitioner maintains, however, that the sale was made by Smith and that respondent erred in taxing it upon the gain on the sale. *92 The basic problem is one which has been considered by the courts many times, under various fact situations, most recently by this Court in Dallas Downtown Development Co., et al., 12 T.C. 114; Steubenville Bridge Co., 11 T.C. 789; Armored Tank Corporation (N. Y.) et al., 11 T.C. 644; and Rose Kaufmann, et al., 11 T.C. 483; and on appeal from this Court, in Commissioner v. Transport Trading & Terminal Corporation, 176 Fed. (2d) 570, (C.C.A. 2, July 11, 1949), reversing 9 T.C. 247. We see no need to discuss in detail these cases and other cases cited by the parties in support of their respective contentions. Many of those cases were summarized by us in Steubenville Bridge Co., supra, and we hold to our observation in that case (at 799) that "* * * where the sale has been made by the stockholders after liquidation has been initiated and with no contractual obligations assumed by the corporation prior to the negotiation of liquidation, the courts have generally taxed the resulting gain to the stockholders." We have found as a fact in the instant proceeding, on the basis of the evidence, that prior *93 to July 8, 1944, when petitioner corporation was liquidated, "nothing was said, nor was any agreement reached, tentative or otherwise, concerning either the purchase price or the particular assets which were sold to Calhoun Lumber Company." Accordingly, we have found as a fact that these assets were sold by H. Dixon Smith in his individual capacity, not by petitioner corporation, and that petitioner corporation did not realize any taxable gain on the sale. As in Acampo Winery & Distilleries, Inc., 7 T.C. 629, and Falcon Co., 41 B.T.A. 1128, we have in the case at bar an express elimination of the possibility of a sale by the corporation itself. In both of the cited cases the corporation had been approached prior to dissolution and had expressly refused to sell the corporate assets as a corporation and did not sell its assets until after dissolution. In the case at bar the ultimate purchaser of the property from the former corporate stockholder had expressly refused to have any negotiations with the corporation for the purchase of the corporate assets as long as he considered that it would be necessary for him to buy the corporate stock. The purchaser expressly *94 stated that prior to any purchase a dissolution of the corporation would be necessary and at no time prior to said dissolution did he enter into any negotiations as to price, terms or quantity. We find it unnecessary to consider the question of whether H. Dixon Smith, in the conversation he held with E. L. Cook of the Calhoun Lumber Company prior to liquidation of petitioner, was a spokesman for petitioner or for himself as a stockholder. See Rose Kaufmann, et al., supra. The point is immaterial, since these conversations were merely exploratory, did not result in a mutual contractual obligation, written or oral or even moral, between the parties, and did not even touch upon price or the particular assets which were sold. After liquidation of petitioner corporation, H. Dixon Smith was free to sell the assets to whom he chose, and the sale which followed was made by him as an independent individual. The rule of Commissioner v. Court Holding Co., 327 U.S. 331 (1945) is inapplicable here. This is not, in the language of that case, a case of a "sale by one person * * * [being] * * * transformed for tax purposes into a sale by another by using the latter as *95 a conduit through which to pass title," nor of "the true nature of a transaction * * * [being] * * * disguised by mere formalisms, which exist solely to alter tax liabilities." In that case there was an agreement prior to liquidation as to the terms and conditions of sale. Here, as we have pointed out, there was no agreement prior to liquidation. In that case, tax avoidance was found to be the sole motive behind the liquidation of the corporation and distribution of its one asset to the stockholders before the sale of that asset. Here, on the contrary, the record is clear that it was because of his health and because he saw more possibility of a sale of the liquidated assets than of a sale of the undissolved closed corporation that H. Dixon Smith had petitioner corporation dissolved and its assets liquidated. These motives on his part do not justify respondent's determination that the gain on the sale was taxable to the corporation. Decision will be entered under Rule 50. *
Footnotes
*. Decision is as amended by Tax Court order dated September 28, 1949.↩