## WIER LONG LEAF LUMBER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12447.

United States Court of Appeals Fifth Circuit.

March 17, 1949.

LEE, Circuit Judge, dissenting in part.

———◆———

Harry R. Jones, Milton H. West, Jr., Thomas J. Reilly, J. A. Phillips and J. L. Lockett, all of Houston, Tex., for petitioner.

Theron L. Caudle, Asst.Atty.Gen., Geo. A. Stinson, Ellis N. Slack, A. F. Prescott

and Sumner M. Redstone, Sp. Assts. to Atty. Gen., and Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, and C. E. Lowery, Sp. Atty., Bureau of Internal Revenue, and Helen Goodner, Sp. Asst. to Atty. Gen., all of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Having to do with a claimed deficiency in excess profits tax for the year 1942, and counterclaims to an unused excess profits credit carry-back for 1943 and 1944, this petition brings up for review, on stipulated facts,[1] a question of law, of first impression and of prime importance. This question is: "Is a corporation which, pursuant to resolution adopted on Dec. 14, 1942, began liquidation in 1942, and continued in liquidation in 1943 and 1944, entitled for the years 1943 and 1944 to the benefit of the unused excess profits credit carry back provisions of Sec. 710(c) (3) (A), I. R. C. 26 U.S.C.A. Int.Rev.Code, § 710(c) (3) (A)?

The Tax Court[2] stated: "The basic consideration in determining petitioner's right to an excess profits tax credit carryback under the provisions of Section 710(c) (3) (A), I. R. C. depends upon whether the word 'corporation' in the excess profits tax law provisions of the code includes liquidating corporations within the tax credit carry-back section." Declaring that it does not, the Tax Court denied the carry-back claims for both years.

Petitioner is here insisting that whatever may be the the the parlous state of other words used in the patchwork crazy quilt assemblage of unrelated acts making up the Internal Revenue Code, the words "taxpayer" and "corporation" are by precise definition made words not of uncertain and ambiguous, but of clear and certain, meaning. It calls to our attention the statements made by the Tax Court in the opinion in this case,

---

[1] Petitioner, a Texas corporation, was chartered in 1907. It constructed a lumber mill in 1917 and 1918 at Wiergate, Texas, and thereafter proceeded to operate the mill for many year.

On Dec. 19, 1942, the stockholders and directors of the corporation adopted resolutions providing for its liquidation, and authorizing its eventual dissolution. It made a liquidating distribution of $1,030,000 on Dec. 22, 1942, carried into 1943 total assets of more than $900,000 made another liquidating distribution of $270,000 on April 26, 1943, and on Dec. 31, 1943, it had gross assets of $141,933.49 ·which it carried into 1944. Its net worth as shown by its balance sheet for Dec. 31, 1943 was $133,814.63, and on December 31, 1944, $137,872.81. The corporation has not been dissolved by filing the necessary consent to dissolution with the Secretary of State of the State of Texas. It filed the required tax returns with the Collector of Internal Revenue for 1943 and 1944. Its 1943 return disclosed total income of $37,152.58, $28,007.60 of which was not gain from capital assets, salaries and wages of $22,903.80, and income and declared value excess profits taxes of $1,974.80, which were paid. Its income tax return for 1944 showed gross income of $1,400.78, and deductions of $1,945.14. These returns were accepted by the Commissioner without material adjustments.

It was stipulated, and the Tax Court found, that if petitioner is entitled to carry back an unused excess profits credit from the year 1943, such carry-back would total $322,334. Petitioner's excess profits net income for its calendar year 1941, exclusive of any specific exemption, was $302,077.30. After carrying back its unused excess profits credit for 1943 to 1941, therefore, it would have remaining $20,257.30 of the 1943 carry-back to apply as a credit against its 1942 excess profits net income. For the calendar year 1944, Petitioner had no excess profits net income. Again it was stipulated and The Tax Court found that if petitioner is entitled to carry back an unused excess profits credit for the calendar year 1944, such carry-back would total $322,334.60 and would constitute an unused excess profits credit carry-back to petitioner's calendar year 1942.

Petitioner contends that in the computation of its "adjusted excess profits net income" for the year 1942, it is entitled to deduct:

(1) The amount of its unused excess profits credit for 1943 remaining after the carry-back to 1941; and

(2) The amount of its unused excess profits credit for 1944.

Respondent refused to allow either of these deductions, and the Tax Court has sustained that refusal.

[2] 9 T.C. 990.

in effect that, every case arising under the carry-back provisions of the section must be regarded as presenting a separate and distinct problem to be solved by determining in each case, as to the particular corporation, whether the conditions, against which congress sought to relieve, actually obtained with respect to it. It urges upon us that the Tax Court has entirely misconceived its function as in effect not to construe the statute but to rewrite it to make it read in each case the way the Tax Court thought congress would write it for that case.[3] Insisting that the law must be given effect as it is plainly written and that in doing so, there is no escape from the conclusion that petitioner is entitled to the credits claimed, it urges upon us that the judgment of the Tax Court may not stand.

The Commissioner shies away from the broad position of the Tax Court, that a liquidating corporation is not and cannot be treated as a corporation for the purpose of the carry-back provisions. He even agrees that if a liquidating corporation continues to operate as a corporation and make excess profits, it is entitled to the carry-backs. His emphasis is put not upon the fact that petitioner is a corporation in liquidation but upon the fact that in 1943 and 1944, it was, as a result of its own volition, out of the business of making excess, or any other kind of profits, and, as to those years, it must be regarded not as a going corporation or a taxpayer, within the meaning and purpose of those terms as used in the excess profits credits carry over provision.

We find ourselves in entire disagreement with the general point of view of the Tax Court as expressed in the quotation from the opinion in this case, set out in Note 3, supra, and its holding that a corporation in liquidation cannot be held to be a corporation within the meaning of Sec. 710.[4]

We find ourselves in equal disagreement with the petitioner's broad position, that the facts and circumstances of, and the stage reached in, liquidation are without significance, and that the only relevant inquiry in a case of this kind is whether the corporation is a corporation still if only in name and form.

We find ourselves, however, in general agreement with the view of the Commissioner that the fact of liquidation and the particular circumstances and stages of it are relevant to the inquiry here, and that they may, indeed must, be inquired into.

We agree with him, too, that if it appears that the corporation is a corporation in name and semblance only, without corporate substance and serving no real corporate purpose, it must, though not formally dissolved, be treated as dissolved de facto.[5]

When in the light of these views we examine the undisputed facts as to the inception and progress of the liquidation, we are left in no doubt that it must be held that petitioner was entitled to a carry-back for 1943, but not for 1944.

---

[3] Cf. this quotation from the Wier case, as set out in Mesaba Cliffs Mining Corp. v. Commissioner, 10 T. C. 1010; "* * * the excess profits tax credit carry-back was intended by Congress to benefit only corporations which had been in active production throughout the war period and which had projected their activities to 'peacetime years'. The amendment was surely not adopted to permit a corporation during wartime years to cease all productive activity and obtain a substantial profit at the expense of the Federal revenue for doing nothing. Such an interpretation would permit a needless and unreasonable diversion of wartime revenue, would promote inflation, and would not assist reconversion to peacetime economy."

[4] Cf. O'Sullivan Rubber Co. v. Commissioner, 2 Cir., 120 F.2d 845; National Investors Corp. v. Hoey, 2 Cir., 144 F.2d 466.

[5] Cf. Camp Wolters Land Co. v. Comm., 5 Cir., 160 F.2d 84.

When on January 1, 1943,[6] petitioner began the year, it had assets worth nearly $1,000,000, including more than $100,000 of accounts receivable, subject to liabilities of $542,539.42. Its liquidation had just begun. It was still in form and in fact a corporation, still carrying on, in winding up, the business for which it was incorporated, still making some, though small, profits, still engaged in necessary and orderly liquidation. Having entered the year as a going corporation, it continued to be a going corporation, at least for the whole of that year.[7]

The fact of which the Commissioner makes so much, that before the end of 1942, the corporation had sold its mill and was no longer making money as an active sawmill company seems to us to be without signifi-

cance here. One of the prime purposes of the carry-back provision was to take care of just such a situation where a corporation, which had made large profits in earlier years, had made little or none in later years. The fact that in 1943, the corporation was avowedly engaged in an orderly liquidation instead of just hanging on with operations bringing no profits, or even losses, is not of any particular significance. Nor can the Commissioner make anything out of his suppositious case of a prolonged liquidation for the express purpose of continuing to accumulate carry-back credits. In the first place such credits are allowable for only two years, and it is hardly conceivable that a well advised corporation would go into and prolong liquidation just to obtain such

---

[6] Taxpayer's balance sheet as of 12-31-42 is as follows:

[7] United States v. Kingman, 5 Cir., 170 F.2d 408.

### Assets.

| Cash: | | | |
|---|---|---|---|
| On Hand | | $ 1,781.67 | |
| In Banks | | 756,244.38 | $758,026.05 |
| Accounts Receivable: | | | |
| Lumber | | | 118,770.57 |
| Less: | | | |
| Reserve for Discounts | $1,965.60 | | |
| Reserve for freight on Sales | 9,725.00 | $ 11,690.60 | |
| | | 107,079.97 | |
| Miscellaneous Accounts | | 13,678.31 | |
| Creditors Debit Balance | | 6,339.66 | |
| | | | 127,097.94 |
| Other Assets: | | | |
| Mill Supplies | | 16,705.30 | |
| Prepaid Insurance Premiums | | 524.35 | |
| Prepaid Rail Lease Rental | | 116.99 | |
| Insurance Deposit | | 3,100.00 | |
| | | | 20,446.64 |
| | | | $905,570.63 |

### Liabilities.

| Accounts Payable: | | | |
|---|---|---|---|
| For Purchases, Expenses, etc. | $ 14,584.84 | | |
| Unclaimed Wages | 116.36 | $ 14,701.20 | |
| Accrued: | | | |
| Social Security Taxes | 7,713.04 | | |
| Federal Income & Excess Profits Taxes | 516,639.17 | | |
| Payroll | 187.73 | 524,539.94 | |
| | | | 539,241.14 |
| Reserves: | | | |
| For contingent liabilities | | 3,500.00 | |
| For Employees Defense Bond purchases | | 75.00 | |
| For Additional compensation | | 40.00 | 3,615.00 |
| | | | $542,856.14 |

### Net Worth.

| | | |
|---|---|---|
| Net Worth of the Corporation at 12-31-42 | | 362,714.49 |
| | | $905,570.63 |

carry-back credits when, by merely curtailing its activities and doing no profitable business it could without liquidation lay unquestioned claim to them. Finally, it is not claimed, it could not be, that the liquidation was entered upon here with any tax advantage purpose in mind. For it is clear from this record that the liquidation could not, and did not, confer any tax advantage.

■ On the other hand, as to the year 1944, it appears from the balance sheet at the end of 1943,[8] that the liquidation had by the year's end progressed to the point where there was no longer any valid reason for delaying dissolution, and the corporation, though not dissolved de jure, must be regarded for the purpose of its claim to excess profits carry back for 1944, as de facto dissolved. For it must be remembered that it is not necessary in Texas to delay dissolution until there has been a complete winding up. Its tax statutes provide for the continuance of corporate existence for three years after dissolution for the purpose of enabling those charged with the duty to settle up its affairs.[9]

The decision of the Tax Court was wrong in denying the carry-back for 1943. It was right in denying it for 1944, but not for the reason that it gave. Its order is affirmed as to the 1944 carry-back but reversed as to that for 1943, and the cause is remanded for redetermination in accordance herewith.

LEE, Circuit Judge (concurring in part and dissenting in part).

I concur in that part of the opinion which allows the carry-back for the year 1943 and dissent from that part of the opinion which denies the carry-back for the year 1944.

At the end of the year 1943, the corporation had substantial assets, namely, postwar refunds of excess profits tax in the sum of $31,230.83. In view of this fact, its failure to liquidate entirely within the year 1943 is explained, and the reason pertinent to a continuation of the liquidation through the year 1944 is made apparent. The case in this respect is somewhat like our decision in United States v. Kingman, 5 Cir., 170 F. 2d 408, where we held that the existence of postwar claims was sufficient cause for continuing liquidation; and I am of the opinion that a denial of the carry-back for the year 1944, in view of the facts referred to, creates a conflict between this case and the Kingman case. Strange to say, while the Commissioner stresses the point that liquidation in 1944 was wholly unnecessary, no fact was developed to which our attention was called that would dispense with the situation hereinabove referred to.

---

[8] Taxpayer's balance sheet as of 12-31-43 is as follows:

Assets.

| | |
|---|---|
| Cash | $110,696.34 |
| Accounts Receivable | 6.32 |
| Postwar Refund of Excess Profits Tax | 31,230.83 |
| | $141,933.49 |

Liabilities.

| | | |
|---|---|---|
| Accounts Payable | | $ 1,250.00 |
| Unclaimed Wages | | 76.80 |
| Federal Income Tax Payable | | 1,974.80 |
| Accrued Payroll Taxes | | 195.97 |
| Reserves: | | |
| For Contingent Liabilities | $3,500.00 | |
| For Storing records | 1,102.54 | |
| For employees Defense Bond purchases | 18.75 | 4,621.29 |
| | | 8,118.86 |

Net Worth.

| | |
|---|---|
| Net Worth of Corporation at 12-31-43 | 133,814.63 |
| | $141,933.49 |

[9] Cf. Taylor Oil & Gas Co. v. Commissioner, 5 Cir., 47 F.2d 108; art. 1389, Vernon's Texas Civil Statutes; Clayton v. Southwest Life Ins. Co., Tex.Civ.App., 158 S.W.2d 820.