UNITED STATES of America,
Appellant,

v.

JACKSON OLDSMOBILE, INC.,
Appellee.

No. 22485.

United States Court of Appeals
Fifth Circuit.

Jan. 23, 1967.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Floyd M. Buford, U. S. Atty., Macon, Ga., C. Moxley Featherston, Gilbert E. Andrews, Thomas L. Stapleton, Attys., Dept. of Justice, Richard M. Roberts, Acting Atty. Gen., Dept. of Justice, Washington, D. C., for appellant.

Charles W. Walker, R. Lanier Anderson, III, Macon, Ga., for appellee.

Before BROWN and COLEMAN, Circuit Judges, and GARZA, District Judge.

COLEMAN, Circuit Judge.

This appeal is from a District Court Judgment which allowed a corporate income taxpayer to carry over 1953 and 1954 net operating losses and deduct them from profits earned during 1956 and 1957. The thorough, exhaustive findings and conclusions of the able District Judge appear in a published opinion, 237 F.Supp. 779 (1964).

The respective positions of the taxpayers and the Government have been thoroughly briefed and argued to this Court. Upon mature consideration, we agree with the decision below that the taxpayer was entitled to the carry over. Consequently, no good purpose is to be served by preparing and publishing a duplicate opinion.

Suffice it to say, we agree with the District Court that under all the facts of this case, the principle of Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957) did not bar this carry over, and we further agree that there was not a defacto liquidation within the rule of Wier Long Leaf Lumber Co. v. Commissioner of Internal Revenue, 5 Cir., 1949, 173 F.2d 549.

We appreciate the argument of the Government that the outcome permits the minority stockholder, Jackson, in the ultimate, to enjoy a tax benefit of a kind not usually encountered. Under the law and the particular facts of this case, however, we feel that this consideration cannot affect the result reached. If the result has any material importance, as it may have on the application of existing

carry over tax statutes to particular corporate operations then the problem is a legislative one.

The judgment of the District Court is Affirmed.

JOHN R. BROWN, Circuit Judge (concurring).

I concur in the opinions and disposition but would add these brief comments.

The pudding's eating ought to be proof in tax cases too. Figures speak and when they do, Courts listen. Brooks v. Beto, 5 Cir., 1966, 366 F.2d 1, 9. The Government's doctrinaire effort to ignore this because this is an accounting result hardly suffices in a statutory system which not only permits, but requires the maintenance of books on accepted accounting principles, so much so that before changes can be made, governmental consent must first be had. See, e. g., Int.Rev.Code of 1954, §§ 446, 6001; Regulations § 1.446–1 (2); see generally Mertens, Federal Income Taxation, Vol. 2 § 12.05(a) (1961 revision), Vol. 8A § 47.43 (1964 revision).

Under the financing program (see note 1, 237 F.Supp. 779, 780), General Motors was both an equity investor and a lender. It owned 60% of the stock (indeed 100% of the voting stock). Jackson owned 40%. GM loaned Jax-Olds $37,500, repayable with interest. GM thus had at stake $75,000, Jackson $25,000. Although it is true that the earnings of Jax-Olds enabled Jackson with his $25,000 initial outlay to end up owning 100% of the business, it is far from true that he alone benefited. On the contrary, GM on the pay-out[1] received substantially $35,000 in excess of its outlay for interest on the debt (Item (1) (b)), appreciation premium on Class A stock (Items (2) (b), 3 (b)) and dividends (Item (5)).[2] Thus, the benefit to GM from dividends and appreciation in stock value amounted to 29% of the total received by it.

The Trial Judge was therefore correct in concluding that GM, as owner of 60% of the stock, received the majority benefit from the carry-over deductions. The benefit was in the form of dividends and appreciation in the value of the stock. Cf. TIR 773.

1. This was consummated subsequent to the tax years here in question, but contrary to Taxpayer's unnecessary and unsound contention this is irrelevant. One does not look upon the tax consequences of a 99-year lease as a one-year lease for the tax year involved.

2. The Government's supplemental brief recaps it as follows:

(1) Payment of Note:
| | | |
|---|---|---|
| (a) Principal | $37,500.00 | |
| (b) Interest | 3,500.00 | 41,000.00 |

(2) 240 Shares of Class A Retired
| | | |
|---|---|---|
| (a) Par Value | 24,000.00 | |
| (b) Premium | 14,379.82 | |
| | | 38,379.82 |

(3) 135 Shares of Class A Acquired
| | | |
|---|---|---|
| (a) Par Value | 13,500.00 | |
| (b) Premium | 7,555.85 | |
| | | 21,055.84 |

| | |
|---|---|
| (4) Total paid General Motors for 375 shares | 59,435.66 |
| (5) Dividends to General Motors | 8,923.49 |
| (6) Total Receipts | $109,359.15 |
| (7) Outlay | 75,000.00 |
| (8) Difference | $ 34,359.15 |