ANBACO-EMIG CORPORATION, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 4032–65.  Filed November 22, 1967.

*Harvey R. Kitay*, for the petitioner.
*Stephen M. Miller*, for the respondent.

OPINION

Section 172(b) (1) (B)[1,2] allows a taxpayer to carry over a net operating loss incurred in 1 year to each of the 5 taxable years following the loss. Respondent does not dispute that in the instant case net operating losses were incurred, but argues that they were incurred by a taxpayer which was not the same taxpayer as the petitioner.

It is his position that when petitioner sold all of its operating assets and ceased operation in 1958, it became "*de facto*" dissolved. When the loft building was acquired by petitioner in 1960, respondent argues that a new corporation was effectively created which was different from the one which incurred the net operating losses, and that consequently it could not possess or use the prior corporation's net operating loss.

Respondent states that the theory of de facto dissolution or liquidation is not a new one, and cites a number of excess profits tax credit cases under earlier Code provisions, where this theory was applied. Heavy reliance is placed on *Wier Long Leaf Lumber Co.* v. *Commissioner*, 173 F. 2d 549 (C.A. 5, 1949), affirming and reversing in part 9 T.C. 990 (1947), and *Winter & Co.* (*Indiana*), 13 T.C. 108 (1949), where we held that once a corporation is de facto liquidated, its unused excess profits credits terminate, and may not be used again. *Winter* is further relied upon, because in that case we also denied a net operating loss carryback from 1944 to 1942, but this was because the taxpayer was not engaged in any business or other operation after April 30, 1942, and therefore it could not have had an operating loss for a tax year subsequent to that date.

As is shown below, it is improper for us to consider the excess profits tax cases as authority in the net operating loss area. We merely pause here to point out that the *Winter* case did no more than hold that a particular company which was not operating and which had no operating assets could not sustain a net operating loss. That case does not touch the problem which is present in the instant case, to wit, whether a company without operating assets can continue to have a net operating loss carryover from a prior year in which it did have such assets and could and did sustain a net operating loss.

---

[1] All statutory references are to be the Internal Revenue Code of 1954 unless otherwise stated.

[2] SEC. 172. NET OPERATING LOSS DEDUCTION.

(b) NET OPERATING LOSS CARRYBACKS AND CARRYOVERS.—

(1) YEARS TO WHICH LOSS MAY BE CARRIED.—

\* \* \* \* \* \* \*

(B) Except as provided in subparagraph (C) a net operating loss for any taxable year ending after December 31, 1955, shall be a net operating loss carryover to each of the 5 taxable years following the taxable year of such loss.

Respondent cites Rev. Rul. 61–191, 1961–2 C.B. 251, which states the Internal Revenue Service's position that net operating losses sustained after a corporation is de facto dissolved will not be allowed to be carried back to prior years. The ruling defines a de facto dissolution as occurring when "a corporation has disposed of all or most of its operating assets, terminated its regular business activities and become a mere shell, a corporation in name and semblance only, without real corporate substance, serving no real corporate purpose, and having no valid or compelling business reason for continuing its existence, even though not formally dissolved."

The ruling then attempts to show that an earlier decision of this Court, *Acampo Winery & Distillers, Inc.*, 7 T.C. 629 (1946), had been overruled, in effect, by the *Wier* case and other cases which discussed and applied the de facto liquidation theory.

In *Acampo Winery*, a corporation in the process of formal liquidation sustained a net operating loss in 1945 which it wished to carry back to 1943. The Commissioner's position was identical to the one he has adopted here. He charged that in 1945 the company was simply marking time, argued that in 1945 *Acampo* was no longer the same taxpayer it had been in previous years, and that Congress intended this deduction only where the same taxpayer was continuing to carry on substantially the same business in the loss years that it had carried on in the taxable year.

We allowed the net operating loss carryback, stating that "The words of the statute are general in their application and something would have to be read into them which is not there to limit them so that they would not apply in this case."

Despite respondent's attempt to show to the contrary, the *Acampo* decision still stands as a valid, and we believe correct, interpretation of the language of the net operating loss sections of the Code.

In the *Wier* case, 9 T.C. 990, 999–1002, the leading case for the de facto liquidation theory, this Court specifically distinguished *Acampo* as a case which discussed only net operating losses, took pains to show the difference between the intent and purpose of the net operating loss carryback and the excess profits tax credits carrybacks, and specifically limited its decision to the excess profits question.

The rationale of the holding is that the excess profits tax provisions of the Internal Revenue Code are unique, enacted to cover the few war years, and designed to control inflation and facilitate a return to a peacetime economy, all in addition to the raising of revenue. We concluded from these factors that Congress had intended that the excess profits tax credit carryback be of benefit only to corporations which had been in *active production* throughout the war years and which had projected *those activities* to peacetime years, for otherwise a cor-

poration could cease all productive activity during wartime and get a substantial profit at the expense of the revenue for doing nothing. We observe that none of these unique factors have relevance to the net operating loss deduction provisions which control the instant case, and we reaffirm the distinction which we drew in *Wier*.

In *Gorman Lumber Sales Co.*, 12 T.C. 1184 (1949), a taxpayer attempted to carry back both a net operating loss and an excess profits tax credit from 1945. In 1945 the taxpayer was nothing more than a corporate shell. Dissolution had been authorized in 1944 and by the beginning of 1945 practically all assets had been distributed. The only purpose in continuing the existence of the corporation after 1944 was to enable the trustee in liquidation to settle up its affairs.

Under the doctrine of *Acampo* we allowed the corporation to carry back the net operating loss sustained in 1945 to 1943, but did not allow the corporation to carry back the excess profits tax credit because the corporation, for purposes of the excess profits tax credit, was de facto dissolved.

We reconciled this allowance of the net operating loss carryback with the disallowance of the excess profits credit carryback by stating (p. 1196) :

The principle announced in the *Acampo Winery* case, *supra*, and applied in the fourth issue herein, that a net *operating loss* carryback deduction is not to be denied under section 23(s) and 122 of the [1939] code to corporations in process of liquidation and dissolution, is not apposite to this issue, since it is effectively distinguishable here for the same reasons as it was distinguished in this Court's opinion in the *Wier* case, *supra*. It is unnecessary to here repeat those reasons.

*Gorman Lumber* and *Acampo* were concerned only with net operating loss carrybacks; the instant case concerns a net operating loss carryforward. However, in *Joseph Weidenhoff, Inc.*, 32 T.C. 1222 (1959), we ignored any distinction between loss carry-forwards and loss carrybacks in determining whether a de facto liquidation had occurred. In that case, a net operating loss of a corporation which was part of an affiliated group was permitted to be carried forward from 1948 and 1949 to 1950 and 1951, even though after 1949 the corporation no longer had any operating assets and did little more than collect debts and engage in court proceedings with respect to income taxes. Respondent there attempted to apply the rationale of the *Winter* case and *A B C Brewing Corp.*, 20 T.C. 515, affd. 224 F. 2d 483 (C.A. 9) (another excess profits tax case), to show that a de facto liquidation had occurred which extinguished any right to carry over net operating losses after 1949.

We relied upon the distinction pointed out in *Wier*, and *Gorman Lumber* in allowing the carry-forward, stating (p. 1234) :

A comparison of cases cited by each party makes it apparent that in considering whether a corporation is de facto dissolved before it is legally dissolved, the

courts have looked not only to the facts of each individual case but also to the different provisions of the tax law under consideration and the underlying purpose of Congress in enacting the various provisions. * * *

The *Weidenhoff* decision, in addition to negating any distinction between carrybacks and carry-forwards, clearly shows that excess profits tax credit cases are not to be considered in the net operating loss area. However, in *Jackson Oldsmobile, Inc.* v. *United States*, 237 F. Supp. 779 (M.D. Ga. 1964), affd. 371 F. 2d 808 (C.A. 5, 1967), respondent again relied on the same excess profits tax credit cases previously discussed in an attempt to show that the petitioner there underwent a de facto dissolution. Once again the court refused to apply the theory to the net operating loss area, and refused to consider the excess profits tax cases as authority.

In that case General Motors and John Williams owned stock in a Buick agency located in Colorado called John Williams Buick Co. General Motors held a majority of the stock outstanding, while Williams, who held the remaining stock outstanding, was president and operated the agency. The corporation incurred net operating losses in 1953 and 1954. Liquidation was authorized in September of 1953 and the last sale was made in November 1953. Financial statements from December of 1953 through September of 1955 showed no operational income, sales, or profits. Income tax returns for 1953 and 1954 showed the corporation to be in the process of liquidation. During this period total assets of the corporation were about $5,000. In 1954 the corporation was removed from Colorado and all affairs were handled through Detroit.

In November of 1955 Leland Jackson desired to take over an Oldsmobile agency in Macon, Ga. Instead of setting up a new corporation with General Motors, Jackson purchased Williams' stock in the Williams corporation which had sold automobiles in Colorado, and General Motors retained its majority interest. The name of the company was then changed to Jackson Oldsmobile, Inc.

When he went into business, Jackson did not acquire any of Williams' equipment or inventory and none of the Williams salesmen and employees came to work for Jackson. A new set of books was also used for the company records.

In 1956 and 1957, Jackson used the net operating losses sustained by Williams to offset income earned by Jackson. The Commissioner disallowed the deduction, claiming that a de facto liquidation had occurred, that Jackson was not the taxpayer who had incurred the losses, and that therefore the 1953 and 1954 losses should not be carried over to 1956 and 1957.

In upholding the right of Jackson to carry over the 1953 and 1954 net operating losses, the court stated (237 F. Supp. at 787):

We cannot agree with the Government's contention that the taxpayer should be regarded as having undergone a de facto liquidation. Impressed with the view as expressed in Norden-Ketay Corporation, supra, 319 F. 2d at 906 that "shareholders who sustain a loss and then are wise enough to liquidate an uneconomic enterprise and embark on a different and profitable field of endeavor through the same corporation are equally entitled to offset the earlier losses as those who see an unprofitable corporation through the lean years into the good ones in the same activity," we think that such shareholders are entitled to a reasonable length of time in which to accomplish the liquidation of the uneconomic enterprise and the embarkation on a different and profitable field of endeavor. We think too that the period of relative inactivity of this taxpayer was not excessive for these permissible purposes. Moreover, the Tax Court has refused to apply the de facto liquidation rule established in Wier Long Leaf Lumber Co. v. Commissioner, 173 F. 2d 549 (5th Cir. 1949), to net operating loss cases. See Gorman Lumber Sales Co. v. Commissioner, 12 T.C. 1184; Acampo Winery & Distilleries, Inc. v. Commissioner, 7 T.C. 629.

In the instant case, there is no more reason for us to consider the excess profits tax credit cases or to find that a de facto liquidation occurred than there was in the *Acampo*, *Gorman Lumber*, *Weidenhoff*, or *Jackson* cases. Here petitioner had substantial assets at all times. It never adopted a formal plan of liquidation or made any other move to go out of business; nor did it change its ownership. Its only action was the sale of its operating assets and the cessation of operating activities for approximately a 2-year period.

We hold that petitioner was not dissolved (de facto or otherwise) for purposes of the net operating loss deduction which it seeks. We are as resistant now as we were in the *Acampo* case to read a limitation into the statute which is not there as an express limitation.[3]

In holding that the Anbaco-Emig Corp. was not dissolved either de facto or otherwise at any relevant time, we also hold that the corporation, at all relevant times, remained the same taxpayer. It merely discontinued one line of endeavor and after a relatively short period of time entered into another.

Discontinuing a loss activity and entering into a wholly new activity has been approved by respondent as an appropriate means of utilizing a net operating loss carryover by a corporation so long as the ownership of the corporation remains substantially unchanged. Rev. Rul. 63–40, 1963–1 C.B. 46. Cf. also the discussion in *Joseph Weidenhoff, Inc., supra,* and *Jackson Oldsmobile, Inc., supra.*

Rev. Rul. 63–40 provides in pertinent part:

Where there has been no change in the stock ownership of a corporation during or after a period in which it incurred losses, the Internal Revenue Service will

---

[3] We note that Congress adopted the *Wier* theory of de facto liquidation in excess profits credits cases when it passed sec. 432(e) of the 1939 Code in 1949. Such section eliminated the excess profits credit in cases where the courts had previously found a de facto liquidation. That no such legislation has been adopted in the net operating loss area by Congress indicates recognition of the distinction between net operating loss deductions and excess profits tax credit deductions.

108

not rely on the rationale of *Libson Shops, Inc.* v. *Kochler*, 353 U.S. 382. (1957), Ct. D. 1809, C.B. 1957-2, 891, to bar the corporation from carrying over the losses under section 172 of the Internal Revenue Code of 1954 against income from a new business enterprise, acquired through a cash purchase of assets at their fair market value, solely because the losses are attributable to a discontinued corporate activity.

Consistent with this ruling respondent has not argued that *Libson Shops* is applicable to the instant case nor has he argued the "continuity of business enterprise" doctrine as there defined.[4]

Petitioner has always been beneficially owned by Joseph Green. Thus, under the authority of the above ruling and the decided cases, it is entitled to carry forward the net operating losses incurred prior to June 1, 1960, to the years in issue and our decision on the only contested issue will be for the petitioner, but because of petitioner's concessions,

*Decision will be entered under Rule 50.*

---

[4] We note that in fn. 9 to its *Libson Shops* opinion, the Supreme Court stated: "We do not pass on situations * * * [where] * * * a *single* corporate taxpayer changed the character of its business and the taxable income of one of its enterprises was reduced by the deductions or credits of another."