**PHILIPP BROTHERS CHEMICALS, INC. (N. Y.), Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee,**

**PHILIPP BROTHERS CHEMICALS TRANS–AMERICA CORP., Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**PHILIPP BROTHERS CHEMICALS PAN–AMERICAN CORP., Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**PHIBRO INTERNATIONAL CORP., Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**PHILIPP BROTHERS CHEMICALS INTERNATIONAL CO., Inc., Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**PHILIPP BROTHERS CHEMICALS EXPORT CORP., Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**
**Nos. 8–13, Dockets 34243, 34249–34253.**

United States Court of Appeals, Second Circuit.

Argued Sept. 29, 1970.

Decided Dec. 1, 1970.

---

54

Irwin B. Robbins, New York City (Otterbourg, Steindler, Houston & Rosen, New York City, on the brief), for appellant in No. 34,243 and for appellees in Nos. 34,249–34,253.

Harold C. Wilkenfeld, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Stuart A. Smith, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee in No. 34,243 and for appellant in Nos. 34,249–34,253.

Before DANAHER,* FRIENDLY and HAYS, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a decision of the Tax Court, 52 T.C. 240 (1969), sus-

* Senior Judge, United States Court of Appeals, District of Columbia Circuit, sitting by designation.

taining the Commissioner's allocation under Section 482 of the Internal Revenue Code of 1954 to Philipp Brothers Chemicals, Inc. (N.Y.), of the net income for the fiscal years ending June 30, 1960 and 1962 [1] of five commonly controlled foreign sales corporations.[2]

Philipp Brothers Chemicals, Inc. (N.Y.) is the principal corporation of a group of eleven corporations [3] organized by Charles Bendheim to engage in the business of buying and reselling industrial and agricultural chemicals in the United States and throughout the world. All eleven corporations during the period in question were under the control, direct or indirect, of the same interests. Bendheim was at all times president of each of the corporations.

The New York corporation was formed in 1946 by Bendheim and an associate to take over the chemicals department of a corporation in which Bendheim's father had been a 50 per cent owner. Within the next five years, other domestic sales corporations bearing the name "Philipp Brothers Chemicals, Inc." were either newly organized or acquired by the New York corporation. These corporations were incorporated and conducted business in Massachusetts, Pennsylvania, Maryland, Connecticut and Rhode Island. The Tax Court refused to sustain the Commissioner's Section 482 allocation of the net income of these five *domestic* sales corporations to the New York corporation. The Commissioner has not appealed from this determination.

In 1950 and 1951, the five foreign sales corporations were organized under the laws of New York. Nearly 90 per cent of the stock of these corporations was owned by Bendheim and his family. Two of the foreign sales corporations, Pan-American and Trans-America, were formed as Western Hemisphere trade corporations under Sections 921 and 922 of the 1954 Code. A qualifying Western Hemisphere trade corporation is allowed a special deduction which makes the effective tax rate for such a corporation substantially lower than that of the usual type of domestic corporations.

The chemicals business conducted by the corporations consisted of the purchase of industrial and agricultural chemicals in large quantities and the resale of these products in smaller quantities. Their operations did not include any repackaging, processing, or manufacturing of chemicals. Of the domestic corporations, only the Pennsylvania and Maryland corporations failed to maintain inventories at the end of the fiscal years in question. Among the foreign corporations, only International maintained any inventory at the end of

1. 1961 is not at issue since the Tax Court found in favor of the taxpayers with respect to that year on the ground that the statute of limitations barred the asserted deficiencies for that year. The Commissioner has not appealed from this aspect of the decision below.

2. The Tax Court, as a consequence of its decision allocating the income to the New York corporation, entered decisions of overpayments with respect to the five foreign corporations, *infra*, n. 3. Protective notices of appeal were filed by the Commissioner to protect the revenue should this Court reverse this decision of the Tax Court. Since we sustain the Tax Court, the protective appeals are dismissed.

3. Philipp Brothers Chemicals, Inc. (Mass.) ("Massachusetts"); Philipp Brothers Chemicals, Inc. (Pa.) ("Pennsylvania"); Philipp Brothers Chemicals, Inc. (Md.)

("Maryland"); Philipp Brothers Chemicals, Inc. (R.I.) ("Rhode Island"); The Philipp Brothers Chemicals Incorporated ("Connecticut").

(The foregoing five corporations were referred to by the Tax Court in its opinion as the "domestic sales corporations" and will likewise be collectively so described here.)

Philipp Brothers Chemicals International Co., Inc. ("International"); Philipp Brothers Chemicals Trans-America Corp. ("Trans-America"); Philipp Brothers Chemicals Pan-American Corp. ("Pan-American"); Philipp Brothers Chemicals Export Corp. ("Export"); and Phibro International Corp. ("Phibro").

(The foregoing five corporations were referred to by the Tax Court in its opinion as the "foreign sales corporations" and will likewise be collectively so described here.)

fiscal year 1960. The absence of actual inventories was explained by the petitioner as being due to the practice of purchasing carloads of chemicals from foreign suppliers and forwarding those same carloads without actually taking physical possession of the chemicals. When one of the corporations needed a chemical that it did not have in inventory, it would purchase the chemical either from another of the corporations at cost or upon the open market.

Many orders to the foreign sales corporations were placed by customers year after year as a result of arrangements made in prior years by Charles Bendheim or by his late father.

All the shipping and bookkeeping arrangements for all of the corporations were handled in the office of the New York corporation at 10 Columbus Circle. Orders for chemicals to all the corporations were sent to the New York office, where employees of the New York corporation made arrangements for the filling and delivery of the orders. Sales were credited to the proper corporation. During 1960 and 1962, a total of $67,800 in service charges was paid by the domestic sales corporations for these bookkeeping and shipping functions. The figure for the five foreign corporations for legal, office and accounting expenses was $3,576.46. No corporation other than the New York corporation had its own bookkeeping or traffic department, but three of the domestic corporations (Massachusetts, Connecticut and Rhode Island) had their own salesmen. Maryland and Pennsylvania each maintained offices and employees in their respective states of incorporation.

For the fiscal years 1960 and 1962, the gross and taxable income of the eleven corporations of the Philipp Chemicals group was the following:

| | Gross Income | Taxable Income |
| --- | --- | --- |
| New York | | |
| 1960 | $3,921,682.21 | $16,989.00 |
| 1962 | 4,314,402.32 | 15,913.70 |
| Massachusetts | | |
| 1960 | 2,999,138.06 | 26,162.43 |
| 1962 | 2,975,386.39 | 23,031.40 |
| Connecticut | | |
| 1960 | 1,121,140.87 | 22,766.18 |
| 1962 | 1,008,391.45 | 23,223.21 |
| Rhode Island | | |
| 1960 | 1,792,310.40 | 25,596.44 |
| 1962 | 2,513,846.77 | 26,189.06 |
| Pennsylvania | | |
| 1960 | 939,143.57 | 25,836.19 |
| 1962 | 1,413,497.57 | 25,433.09 |
| Maryland | | |
| 1960 | 1,243,545.82 | 27,294.00 |
| 1962 | 2,840,582.02 | 24,934.98 |
| International | | |
| 1960 | 142,139.82 | 18,856.88 |
| 1962 | 262,815.36 | 28,499.39 |
| Trans-America | | |
| 1960 | 256,286.79 | 9,913.62 |
| 1962 | 136,422.13 | 6,567.51 |
| Pan-American | | |
| 1960 | 569,735.33 | 17,768.39 |
| 1962 | 423,417.31 | 26,774.03 |
| Export | | |
| 1960 | 41,101.26 | 4,548.47 |
| 1962 | 76,147.54 | 3,889.66 |
| Phibro | | |
| 1960 | 97,317.84 | 9,866.40 |
| 1962 | 14,797.84 | 3,558.14 |

Unlike the five domestic sales corporations which incurred and reported expenses for officers' salaries, other wages and salaries, and rent, the five foreign sales corporations claimed no similar deductions on their returns with the exception of a single item of $471.77 reported by Pan-American for 1962 for "Salesmen's expenses."

The sole issue is whether the Tax Court erred in holding that the Commissioner's allocation to Philipp Brothers Chemicals of New York, pursuant to Section 482 of the Internal Revenue Code of 1954, of all of the net income of its

five commonly controlled foreign sales corporations, was arbitrary or unreasonable.

Section 482 of the Internal Revenue Code of 1954 vests the Commissioner with considerable discretion in cases of this kind:

> *Sec. 482.   Allocation of Income and Deductions Among Tax-payers.*
>
> In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

The House Report which accompanied the original version of the section (Section 45 of the Revenue Act of 1928, c. 852, 45 Stat. 791) explained that the purpose was to allow the "Commissioner * * * [to] distribute the income or deductions between or among [the controlled corporations] * * * in order clearly to reflect their true tax liability." H.Rep. No. 2, 70th Cong., 1st Sess., 1939–2 Cum. Bull. 395.[4]

■■ A determination by the Commissioner under Section 482 "is es-sentially one of fact and * * * must be affirmed if supported by substantial evidence." Advance Machinery Exchange v. C. I. R., 196 F.2d 1006, 1007–1008 (2d Cir.), cert. denied, 344 U.S. 835, 73 S.Ct. 45, 97 L.Ed. 650 (1952). The Commissioner has broad discretion in appraising particular fact situations. His determinations will not be set aside unless clearly shown to be unreasonable or arbitrary, Ballentine Motor Co. v. C. I. R., 321 F.2d 796, 800 (4th Cir. 1963), and the taxpayer has the burden of proving that this discretion has been abused. Hall v. C. I. R., 294 F.2d 82, 85 (5th Cir. 1961).

The Commissioner argues that the taxpayers here have not met their required burden of proving that the allocation of all of the net income of the five foreign sales corporations of the New York corporation was either arbitrary or unreasonable. We agree.

■■ Section 482 was designed to grant the Commissioner authority to reallocate income among controlled businesses in just such a situation as this. The statute rests on the well-settled policy that income is taxable under Section 61 of the 1954 Code to the party who earns it and that it is economic reality rather than legal formality which determines who earns income. Income-splitting devices designed to save taxes cannot be used to undermine the established principle that income is to be taxed to its real owner. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935).

■ In this case, the Commissioner and the Tax Court found[5] that the five

---

4. "[C]learly to refect the income" provides a reason for allocation which is quite independent of the "evasion of taxes" reason. Central Cuba Sugar Co. v. C. I. R., 198 F.2d 214, 215 (2d Cir.), cert. denied, 344 U.S. 874, 73 S.Ct. 167, 97 L.Ed. 677 (1952). The latter grounds are not involved here.

5. "*Application.* Transactions between one controlled taxpayer and another will be subjected to special scrutiny to ascertain whether the common control is being used to reduce, avoid, or escape taxes. In determining the true taxable income of a controlled taxpayer, the district director is not restricted to the case of improper accounting, to the case of a fraudulent, colorable, or sham transaction, or to the case of a device designed to reduce or avoid tax by shifting or distorting income, deductions, credits, or allowances. The authority to determine true taxable income extends to any case in which either by inadvertence or design the taxable income, in whole or in part, of a controlled tax-

foreign sales corporations did not earn any of the income they reported. The evidence clearly supports that conclusion. Unlike the domestic sales corporations, income of which the Tax Court declined to allocate to the New York corporation, there is no evidence to show that the foreign sales corporations carried on any substantial business activities. With the exception of a single item of $471.44 for "Salesmen's expenses" deducted by Pan-American, the foreign corporations did not claim any deductions for salaries or wages. There is no evidence that the foreign corporations had any employees. The sole deductions for 1960 and 1962 were for charitable contributions, taxes, minimal amounts for office, legal and accounting expenses, and special tax-saving deductions for the Western Hemisphere trade corporations. It was shown that all of the bookkeeping and shipping arrangements were made in the office of the New York corporation. Nothing in the record indicates that the foreign corporations did anything whatever to earn the income they reported. On the basis of this evidence there is no ground for concluding that the findings of the Tax Court were clearly erroneous. C. I. R. v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

■ It is also contended that the Commissioner cannot, as a matter of law, make a Section 482 allocation of 100 per cent of a corporation's income unless the corporation is a sham. For this proposition the taxpayers cite this court's decision in W. Braun Co. v. C. I. R., 396 F.2d 264 (1968). In *Braun* we said:

"The Commissioner was therefore not justified in arbitrarily allocating all of Braunware's taxable income to petitioner. Such an allocation is authorized only when there is no business purpose to the challenged transaction or corporate structure. Section 482 does not give the Commissioner the power to disregard separate corporate

entities if they are being used for a bona fide business purpose." *Id.* at 268 (footnotes omitted).

While we do not accept the Commissioner's argument that this language in *Braun* applies only to the Commissioner's authority "to prevent evasion of taxes" and not to his power "clearly to reflect the income" of controlled business organizations, we nevertheless believe that *Braun* is inapplicable here. In *Braun* there was substantial evidence that the separate corporation performed some business function. The quoted language was not intended to forbid a 100 per cent allocation in a case such as this where there is no evidence that the foreign sales corporations actually did anything at all. *Braun* must be read in the light of National Investors Corp. v. Hoey, 144 F.2d 466, 468 (2d Cir. 1944), where Chief Judge Learned Hand said:

"[T]o be a separate jural person for purposes of taxation, a corporation must engage in some industrial, commercial, or other activity besides avoiding taxation: in other words, that the term 'corporation' will be interpreted to mean a corporation which does some 'business' in the ordinary meaning; and that escaping taxation is not 'business' in the ordinary meaning."

The taxpayers further argue that the foreign sales corporations had the right to receive some income from the transactions which were assigned to them because their capital was at risk in those transactions. However there is nothing in the record which would permit an inference that the foreign corporations did in fact risk their capital. No sales contracts, insurance policies, or shipping documents were put into evidence to indicate that they risked suffering any loss. What evidence there is indicates that after a profitable sale had been completely arranged by the New York corporation, it was thereafter arbitrarily assigned to one of the foreign corporations.

payer, is other than it would have been had the taxpayer in the conduct of his affairs been an uncontrolled taxpayer dealing at arm's length with another uncontrolled taxpayer." Regulation § 1.482–1(c).

In any event the taxpayer had the burden of showing that the 100% allocation of income to the New York corporation was unjustified. Taxpayers ask us to remand the case in order to allow them an opportunity to establish that the 100 per cent allocation was unreasonable and to show what a reasonable allocation would be. We see no reason for according them another chance on this issue.

Affirmed.