QUINTIN U. FORD AND BARBARA B. FORD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ford v. Commissioner
Docket No. 2787-81.
United States Tax Court
T.C. Memo 1983-556; 1983 Tax Ct. Memo LEXIS 227; 46 T.C.M. (CCH) 1353; T.C.M. (RIA) 83556; September 12, 1983. Edward F. Rodenbach, for the petitioners. Robert E. Marum, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined a deficiency of $15,427 in petitioners' 1976 Federal income tax. After concessions, the issues for decision are (1) whether in substance, as well as in form, a limited partnership contributed stock in a corporation to an educational organization and (2) whether the contribution, however characterized, was complete in calendar year 1976. FINDINGS OF FACT All of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by reference.
Petitioners Quintin U. Ford and Barbara B. Ford, husband and wife, resided in Darien, Connecticut, when they filed their 1976 joint Federal income tax return with the Internal *230 Revenue Service Center, Andover, Massachusetts, and when they filed their petition in this case. Sometime during 1968, Quintin U. Ford (petitioner) became a limited partner in a partnership known as Makai Underwater Leasing Company (herein the partnership). The partnership was a limited partnership organized under the laws of the state of New Jersey and engaged in the trade or business of leasing research equipment. Petitioner held a 4.06 percent interest in the partnership. The sole asset of the partnership was a marine underwater habitat, known as the Aegir[1], which was designed for projects requiring deep-sea divers to remain on the ocean floor for prolonged periods. The partnership originally had a cost or other basis of $1,123,901 in the Aegir.
*231 Up to 1973 the Aegir was leased to Makai Range, Inc. (Makai Range). Makai Range offered the services of the Aegir to government, private industry, and academic organizations. To aid an attempt by Makai Range to obtain a contract with the Navy for the employment of the Aegir, the partnership modified the Aegir to meet Navy specifications. To finance the modifications, the partnership borrowed $200,000 from Lumber Industries, Inc. (Lumber Industries). The loan was secured by a mortgage on the Aegir but was otherwise without recourse to the partnership. Makai Range was unable to conclude an agreement with the Navy for the use of the Aegir. As a consequence of this failure and continuing overhead expenses, Makai Range went out of business sometime during 1973. Following the demise of Makai Range, and still within 1973, the partnership indirectly leased the Aegir to the University of Hawaii (University) through the means of a corporation whose only asset was a leasehold interest in the Aegir and only income was the rental payments from the University. The lease called for the University to pay an annual rental in nominal amount and to maintain the *232 Aegir. These arrangements were described in the following terms by James D. Bishop, a general partner of the partnership, in a progress report to the limited partners dated April 3, 1974: "This allows us to maintain ownership of the [Aegir], and have it maintained and used until we can find a place either to lease it on a commercial basis or sell it. This lease will maintain our business relationship and allow us to continue to depreciate the [Aegir]. * * *" In December 1975 Lumber Industries commenced a lawsuit against the partnership and the University in the Circuit Court of the First Circuit for the State of Hawaii to foreclose its mortgage on the Aegir. The general partners of the partnership and Lumber Industries negotiated a proposed settlement of the foreclosure action during July 1976 which included, among other things, the payment of $6,500 by the partnership to Lumber Industries, the removal and disposition of certain equipment then on board the Aegir by Lumber Industries, and the release by Lumber Industries of the remainder of the partnership's nonrecourse debt and mortgage. By a memorandum dated August 26, 1976, James D. Bishop and J. Bruce *233 Stevenson, general partners of the partnership, informed the limited partners that the proposed settlement of the Lumber Industries' suit included a discharge of the $200,000 mortgage for a payment of $6,500 and would result in income to the partnership of $193,500. The memorandum went on to state: In order to enable the Partnership to employ or dispose of the vessel in a manner most advantageous to all of the Partners, it has been determined that the Partnership should first transfer the vessel to a Corporation, 100% of the stock of which will be initially owned by the Partnership. This will give the Partnership the necessary flexibility to take any of the following alternative courses of action: (1) distribution of the stock of the Corporation to the Partners in kind in complete liquidation of the Partnership; (2) sale of the stock of the Corporation to a third party; (3) donation of the stock of the Corporation to an educational or chartiable organization, including, but not limited to, the University of Hawaii. The memorandum requested the limited partners to give their written consent to the proposed transfer of the Aegir to a corporation and the proposed sale or other *234 disposition of the stock of the corporation. The consents were necessary to the completion of the plan as a provision in the partnership agreement required the approval and written consent of an aggregate of two-thirds in interest of the limited partners prior to a transfer of all the assets of the partnership. The memorandum cautioned the limited partners, "[o]f course, if the consent of the necessary two-thirds is not forthcoming, the individual partners will be required to report their pro rata share of a minimum of $160,000 of recapture, i.e., ordinary income, for the calendar year 1976 without the possibility of realizing any of the advantages which could follow from transfer of the vessel to a Corporation." A total of 95 percent by interest of the limited partners, including petitioner, joined in consenting to the proposals. On September 22, 1976, Fujio Matsuda of the University wrote to David Reber of Goodsal Anderson & Quinn, attorneys for the partnership, stating the University understood the partnership desired to donate the Aegir to the University in the immediate future. The letter states in part: This letter is to inform you that the University is interested *235 in accepting the Aegir as a gift. We understand and agree that the gift will be in the form of a transfer of all shares of stock of the newlyformed corporation, the sole property of which is the Aegir. * * * You should be aware that the University cannot accept the transfer of the corporate stock until it is assured that there are no other liabilities or encumbrances upon the Aegir. Lumber Industries, the University, and the partnership stipulated a dismissal of the foreclosure suit with prejudice to the rights of the parties on September 29, 1976. The following day, September 30, the organizational meeting of a corporation to be called Makai Corporation was held and the partnership transferred its interest in the Aegir to Makai Corporation in exchange for one share of common stock of Makai Corporation. This one share was the entire outstanding stock of Makai Corporation. On the same day the partnership's attorneys sent a letter to the University enclosing the Makai Corporation stock as a donation, and accompanied by a stock power endorsed in blank, the resignations of the officers and directors of Makai Corporation, a letter from the partnership's attorneys on behalf of *236 the partnership containing assurances that the Aegir was free and clear of encumbrances and other liabilities, executed consents of the required number of limited partners consenting to the transfer of the Aegir to the Makai Corporation, and Makai Corporation's corporate documents, record book, and seal. The fair market value of the Aegir was $600,000 on September 30, 1976. Petitioner and respondent agree that the assets of the partnership as of September 1976 had been fully depreciated and had no basis in the hands of the partnership as of that time. On September 30, 1976, prior to its exchange to Makai Corporation for stock, the Aegir had been (1) held by the partnership for more than one year, (2) used in the trade or business of the partnership during the period it was held by the partnership, and (3) depreciated by an amount equal to $1,123,901. Makai Corporation did not conduct any business during the time it was owned by the partnership. The sole asset of Makai Corporation was the Aegir.
The Committee on Finance (Committee) of the Board of Regents of the University (Board) met on February 15, 1978, to consider whether it should recommend to the Board *237 that the gift from the partnership be accepted. The Committee deferred the matter on the basis of the maintenance costs involved and its concerns as to whether the University had sufficient need for the use of such a vessel. The Board deliberated the issue in its meeting on May 11, 1978, and unanimously agreed the Aegir would be accepted by the University. Petitioner and his wife claimed petitioner's portion of the gift of stock to the University as a charitable contribution under section 170(a)(1)[2] subject to the provisions of section 170(b)(1)(C) limiting the amount of the deduction to 30 percent of the contribution base of petitioner and his wife. Respondent determined the gift in the form of stock was contrary to its substance and should be disregarded as a sham. Respondent recharacterized the gift for tax purposes as a direct transfer of the Aegir to the University and applied the limitation of section 170(e) to the contribution which reduced the amount of the allowable deduction to zero. Respondent also determined the gift to the University was not complete in 1976. *238 ULTIMATE FINDINGS OF FACT The transfer of the Aegir by the partnership to Makai Corporation was carried out for the sole purpose of tax avoidance in order to gain a tax deduction for its partners through the donation of the Aegir to the University. Makai Corporation was a sham and acted solely as a conduit for the tax avoidance purpose. OPINION We must determine whether the gift by the partnership, of which petitioner was a limited partner, to the University was in fact and substance a gift of stock or a donation of the Aegir. We conclude the partnership made a gift of the Aegir. Makai Corporation was utilized for the sole purpose of tax avoidance and was without substance. While it is well recognized that, "the legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted", Gregory v. Helvering,293 U.S. 465, 469 (1935), the tax aspects of a particular transaction depend upon its substance and not the form in which it is embodied. *239 Commissioner v. Court Holding Co.,324 U.S. 331, 334 (1945); Higgins v. Smith,308 U.S. 473, 476 (1940); Griffiths v. Helvering,308 U.S. 355, 357-358 (1939); Owens v. Commissioner,64 T.C. 1 (1975), affd. in part (on this issue) abd revd. in part 568 F.2d 1233 (6th Cir. 1977). The foregoing represent merely a small selection from a large body of cases that repeatedly have held the substance of a transaction rather than the form in which it is cast is determinative of tax consequences.
A corporation will be recognized as a separate taxable entity so long as the purpose or the corporation is the equivalent of business activity or is followed by the carrying on of business by the corporation. Moline Properties v. Commissioner,319 U.S. 436 (1943); Jackson v. Commissioner,233 F.2d 289 (2d Cir. 1956); Aldon Homes, Inc. v. Commissioner,33 T.C. 582, 597 (1959); Siegel v. Commissioner,45 T.C. 566 (1966). It is well established that escaping taxation is not a business activity. *240 National Carbide Corp. v. Commissioner,336 U.S. 422, 437 n.20 (1949), citing National Investors Corp. v. Hoey,144 F.2d 466, 468 (2d Cir. 1944); Aldon Homes, Inc. v. Commissioner,supra;Noonan v. Commissioner,52 T.C. 907 (1969), affd. 451 F.2d 992 (9th Cir. 1971). The record clearly shows that at the time of the gift the partnership understood it had realized a substantial amount of income from the discharge of indebtedness without the receipt of cash or other property with which to pay the resulting tax. The partners needed a large deduction to offset this income. The limited partners of the partnership were asked to consent to the transfer of the Aegir on the basis of three possible courses of action: (1) a distribution of the shares of Makai Corporation to the partners in liquidation of the partnership, (2) a sale of Makai Corporation to a third party, or (3) a donation of the stock to an educational or charitable organization. Although it is possible to identify three different purposes underlying the consent granted by the limited partners, it does not follow that each of these reasons *241 was before the partnership on September 30, when the transfer was made or even when the consent of the limited partners was requested on August 26, 1976. The partnership and the University commenced a dialogue by no later than September 22 on the subject of the donation of the Aegir in the form of a corporation. Eight days later, on September 30, the Aegir was both transferred to Makai Corporation in exchange for stock and the stock was tendered to the University along with an executed stock transfer, corporate records, and other documents. There is nothing in the record to indicate there was any potential for the sale of the Aegir or that any sale was considered, except for the self serving reference in the memorandum of August 26, 1976, requesting the limited partners to agree to the transfer. Equally, the record is silent on the prospects of a distribution of the shares of a corporation in liquidation of the partnership except as set out in the August 26 memorandum. Further, there is nothing to indicate that commercial exploitation of the Aegir was feasible or likely. The failure of Makai Range and the leasing of the Aegir thereafter at a nomimal rent *242 to the University confirm the Aegir's lack of commercial prospects. Makai Corporation did not conduct business and its incorporation served no business purpose. Petitioner has the burden of proof and must establish that he is entitled to the deduction claimed. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioner simply has not met his burden of proof. All of the steps taken by the partnership were interdependent events, following closely together in time in an effort to resolve the partners' needs for a large tax deduction. "A given result at the end of a straight path is not made a different result because reached by following a devious path." Minnesota Tea Co. v. Helvering,302 U.S. 609, 613 (1938). We hold the partnership's use of Makai Corporation was a sham and the substance of the transaction, a gift of the Aegir to the University, should be recognized for tax purposes. The partnership used Makai Corporation as a conduit for the gift of the Aegir to the University to avoid the strictures of section 170(e). [3]Section 170(e) provides the amount of any charitable contribution *243 of property shall be reduced by the amount of ordinary income or short-term capital gain which would have been realized by the taxpayer if he had sold the property for its fair market value instead of donating it to charity. *244 The Aegir was property used in a trade or business and ordinarily would have yielded long-term capital gain on sale by the partnership under section 1231. However, the Aegir was fully depreciated by September 1976 and would have produced ordinary income on sale under the provisions of section 1245. In these circumstances, section 170(e) reduces the value of the charitable donation of $600,000, the fair market value of the Aegir, by the amount of ordinary income which would have been realized on sale, $600,000. The net charitable contribution by the partnership, therefore, is zero. Consequently, we hold petitioner's share of the partnership's charitable contribution is zero. Petitioner contends the Aegir was put into corporate solution to give the protections of limited liability provided by state law to any potential buyer of the Aegir, any donee, and the limited partners of the partnership. In support of this argument petitioners allege (1) the Aegir was inherently dangerous, (2) the maintenance and leasing of the Aegir required contractual commitments with third parties, and (3) the partnership always leased the Aegir to third parties through *245 an intervening corporation. There are no facts supporting any of these contentions and allegations, except that the partnership leased the Aegir to third parties through an intervening corporation. The memorandum of August 26, 1976, to the limited partners does not refer to limited liability as an objective of incorporation.Although we understand generally that ownership of property often implies contractual commitments with third parties, the record discloses the University, and not the partnership, was responsible for the maintenance of the Aegir during the period in question. In any event, petitioner's contentions about possible future contractual commitments of this type are not persuasive in circumstances where incorporation is followed on the same day by a gift of all of the stock of the corporation. Lastly, the fact the partnership previously leased the Aegir to third parties through an intervening corporation is not determinative as to whether Makai Corporation was organized to secure limited liability for the limited partners. The corporate structure erected by the partnership contained no foundation or building materials of substance. See *246 Owens v. Commissioner,supra.Makai Corporation was built upon the sand, "* * * and the rain descended, and the floods came, and the winds blew, and beat upon that house; and it fell: and great was the fall of it." [4]
Petitioner argues our opinion in Palmer v. Commissioner,62 T.C. 684 (1974), affd. on another issue 523 F.2d 1308 (8th Cir. 1975), should control here.Although there is a superficial similarity between the facts in Palmer v. Commissioner,supra, and those now before us, the cases are clearly distinguishable. In Palmer v. Commissioner,supra, an individual taxpayer owned about 30 percent of the shares of a corporation. The remainder of the outstanding stock was owned by a trust of which the taxpayer was both trustee and income beneficiary. During the course of one day, a charitable foundation, of which the taxpayer was the controlling trustee, purchased the shares owned by the trust and received a charitable donation from the taxpayer of enough additional shares in the corporation so that the foundation owned 80 percent of the outstanding shares. On the *247 following day, the foundation, as shareholder, voted for a redemption of the stock in exchange for certain assets of the corporation. The redemption was carried out later that day. The Commissioner concluded the form of the transaction did not conform to its substance and determined the proper ordering of the events should have reflected a redemption of shares from a taxpayer followed by a charitable donation to the foundation of the assets received in the redemption. The corporation whose shares had been donated to the foundation had been conducting business for many years and was not a sham. The foundation also was of independent substance. We concluded the gift of stock to the foundation should be recognized because the foundation was not a sham and the redemption was not agreed until after the foundation became the shareholder. The issue in Palmer v. Commissioner,supra, was the proper ordering of events. The Commissioner did not allege either the charitable foundation or the corporation whose stock was donated should be disregarded for lack of substance. A substantial variation in the amount of an allowable deduction for a charitable contribution was *248 not then in issue. The partnership in the present case used Makai Corporation solely for the purpose of avoiding the payment of tax. Petitioner also argues the partnership's transfer of the Aegir to Makai Corporation for stock conforms to the requirements set out in section 351 for a tax free exchange and should be recognized for tax purposes on that basis. Even assuming for reasons of argument that the requirements of section 351 were fully met by the partnership and that no gain was to be recognized on account of the exchange of the Aegir for stock, our holding that Makai Corporation can be disregarded as a sham is not upset. Section 351 provides a method for taxpayers to effect a tax free exchange with a corporation but does not pack substance into an otherwise empty shell. Petitioner's argument is irrelevant. Having concluded petitioner's share of the partnership's charitable contribution is zero, there is no need to consider respondent's alternative argument that the gift was not complete in 1976. Decision will be entered under Rule 155.
Footnotes
1. Petitioner and respondent stipulated that the sole asset of the partnership was the Aegir. Exhibits to the stipulation disclose the partnership owned the marine underwater habitat, a crane, a decompression chamber, and a small pontoon device known as the LIR (launch, recovery, and transport).We find that the crane, decompression chamber, and LIR were equipment for the habitat and were part of the Aegir.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue.↩
3. The pertinent part of sec. 170(e)(1) provides: (e) CERTAIN CONTRIBUTIONS OF ORDINARY INCOME AND CAPITAL GAIN PROPERTY.-- (1) GENERAL RULE.--The amount of any charitable contribution of property otherwise taken into account under this section shall be reduced by the sum of-- (A) the amount of gain which would not have been long-term capital gain if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of such contribution), and * * * 50 percent (62 1/2 percent, in the case of a corporation) of the amount of gain which would have been long-term capital gain if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of such contribution). For purposes of applying this paragraph (other than in the case of gain to which section 617(d)(1), 1245(a), 1250(a), 1251(c), or 1252(a) applies), property which is property used in the trade or business (as defined in section 1231(b)↩) shall be treated as a capital asset.
4. Matthew 7:27↩